[No. 6374-3-II. Division Two. November 6, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM BRUCE WALKER, *Appellant.*

842

*Thomas C. Phelan* and *James D. Hamilton,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Darvin J. Zimmerman, Deputy,* for respondent.

PETRIE, J.—William Bruce Walker appeals his sentence to life imprisonment following conviction by jury verdict of the crime of first degree statutory rape. RCW 9A.44.070. On appeal he assigns as error three trial court evidentiary rulings admitting challenged testimony of (1) the child victim; (2) the victim's mother; and (3) several witnesses to whom another witness had related the victim's version of the event. Defendant also contends the trial court erred by denying his motion for new trial because of alleged prosecutorial misconduct and by sentencing him to life imprisonment. We affirm the judgment and sentence.

Evidence at trial indicates that in the early morning hours of October 9, 1981 defendant (who was temporarily a

guest in the child's residence with other adults) entered the child's bedroom and inserted his finger into the child's vagina. The child's 18–year–old female babysitter heard the child crying some time after 3:30 a.m. When she checked on the child, the child said, "that man hurt me." In response to the sitter's inquiring as to what the man did, the child said, "he stuck his finger in my wiener." The only other male in the house at the time, except Walker, was in bed with the babysitter. This other male testified that he arose and encountered Walker coming out of the bathroom and that Walker said he was getting the child a glass of water. Apparently, Walker left the premises immediately and returned to his own house; he was no longer at the child's residence when the sitter came out of the child's bedroom.

On cross examination of the sitter, defense counsel elicited that she had been arrested for stealing children's clothing for the victim's birthday 2 days after the rape incident, and that her acceptance into a diversion program as a result of a subsequent arson charge was then pending before the prosecutor. When defending his right to pursue this line of cross examination in response to the State's objection, defense counsel declared (in the absence of the jury) "we simply have a situation where she is directly lying . . ." and "I think it's arguable that there's some kind of trade–off . . ."

Within the next day or two (in some cases within a few minutes or hours) following the rape incident, the sitter told at least six persons (including the child's mother) what the victim had told her about the incident. Over defense objection, three of these persons were permitted to tell the jury what the sitter had told them. When the State attempted to elicit the same testimony from a fourth witness (the deputy sheriff who had conducted the initial investigation of the crime) the trial court initially sustained a defense objection, ruling that the testimony was cumulative. Nevertheless, on cross examination, defense counsel asked the deputy several questions concerning what the sitter had told him, including the question, "Is there any-

thing else Deanna [the sitter] may have told you?" On redirect examination, the trial court then permitted this witness to relate the "wiener" statement. Under similar circumstances, the trial court also allowed two other witnesses (one of whom was a defense witness) to recite the child's "wiener" statement as it had been given to the babysitter immediately after the incident.

■ We find no error in the trial court's rulings. Without a doubt, the constant repetition of the victim's statement to the jury through the testimony of six witnesses, each one step removed from hearing the child's recital of the incident, was devastating to the defense of this crime. Nevertheless, in each instance, the testimony was relevant to rebut the express challenge to her credibility. Under the present rules of evidence, it was not merely admissible to rehabilitate the witness. It was not "hearsay"; it was admissible as proof of the fact recited by the declarant to the witness.

Recently we discussed the significance of ER 801(d)-(1)(ii), which authorizes use of prior consistent statements of a witness, under limited circumstances, as proof of the fact asserted by the declarant to that witness.[1] *State v. Harper*, 35 Wn. App. 855, 670 P.2d 296 (1983), *review denied*, 100 Wn.2d 1035 (1984). The holding of *Harper* is that when the conditions set forth in ER 801(d)(1)(ii) are present and the witness' prior consistent statements were made before the date of facts from which the motive to falsify can be inferred, the prior consistent statement is relevant and may be admitted.

---

[1]ER 801(d)(1) provides:

"**(d) Statements Which Are Not Hearsay.** A statement is not hearsay if—

"(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is (i) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (iii) one of identification of a person made after perceiving him; . . ."

Here, the sitter's testimony of what the child told her immediately after the incident was admissible as the excited utterance of the child. Indeed, admissibility of the sitter's testimony of that fact was not challenged by defendant. Here, also, defendant expressly challenged the sitter's credibility. Furthermore, the record indicates that the sitter related the child's "wiener" story to the other witnesses very shortly after the child made the statement to the sitter. The trial court most carefully and correctly considered the full implications of ER 801(d)(1)(ii). We find no error.

We turn then to defendant's challenge to the child's mother's testimony. She returned home at 8 a.m. on October 9, the morning of the incident. She examined the child's vaginal region, which, incidentally, the child called her "wiener," and noticed that "it was red, very red." Over defense objection the mother testified that the area did not look like its natural color. The thrust of defendant's objection is that the mother had just testified that she had never previously cleansed the child with a Q–tip or examined her in that manner. The trial court permitted the challenged testimony as an opinion by a nonexpert witness consistent with ER 701. We find no error in the trial court's discretionary ruling. The mother's previous testimony does not indicate that she had never observed the child's genitalia. She was not asked that question, and it would be singularly unrealistic so to conclude simply because of her previous testimony. We hold that the mother's previous testimony does not demonstrate a lack of foundational knowledge to testify whether or not the area looked natural. Furthermore, a pediatrician who examined the child at 2 p.m. October 9 testified that there was "a slight amount of redness in the posterior vaginal wall" which could be consistent with a finger penetration. We find no reversible error in permitting the mother's testimony.

Walker also contends the trial court erred by declaring the child competent and permitting her to testify at trial. On October 9, 1981, the child was 1 day short of being

4 years old. Trial was held the following March. The record amply indicates that the trial court was keenly aware of the fact that, because of the child's chronological age, she was dangerously close to the lowest age level capable of meeting the competency standards set forth in *State v. Allen*, 70 Wn.2d 690, 424 P.2d 1021 (1967). Accordingly, the trial judge was noticeably thorough in his summation as to why she met each of the *Allen* standards.

At trial the child was obviously, but understandably, a difficult witness for both counsel and the court; and her cross examination, unfortunately, was truncated when she became tired, cried, and said her ear ached. Nevertheless, *defendant* later presented to the jury a video tape recording of her pretrial deposition—apparently to demonstrate to the jury the child's animosity toward the defendant and his counsel. In view of all the circumstances, we cannot hold that the ruling was an abuse of the degree of discretion afforded to the trial court. *See State v. Johnson*, 28 Wn. App. 459, 624 P.2d 213 (1981), *aff'd*, 96 Wn.2d 926, 639 P.2d 1332 (1982).

We need not tarry long on defendant's remaining assignments of error. Though the prosecuting attorney may have used some indiscreet remarks in closing argument, we do not find any substantial likelihood that his comments affected the jury. Accordingly, we find no reversible error. *State v. Reed*, 102 Wn.2d 140, 684 P.2d 699 (1984).

Defendant's sentence of life imprisonment was precisely the punishment prescribed by the Legislature for this crime when it was committed. RCW 9A.20.020, as then amended by Laws of 1981, ch. 137, § 37. The only alternative would have been imposition of a fine of $50,000, which the trial court expressly rejected. A deferred or suspended sentence is expressly prohibited by statute. RCW 9A.44.070(2). We expressly reject Walker's contentions that the statute imposed cruel and unusual punishment and that the statute violated his constitutional rights to due process of law and equal protection under the law. Similarly, we reject Walker's contention that the Legislature mistakenly

enacted the 1981 statute simply because it was subsequently amended in 1982.

Judgment affirmed.

WORSWICK, A.C.J., and REED, J., concur.

Review denied by Supreme Court January 4, 1985.