[No. 16805–3–I.   Division One.   July 20, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT S. HENDERSON, *Appellant.*

*Robert S. Henderson,* pro se, and *John Christiansen* and *Nancy Talner* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

PEKELIS, J.—Robert S. Henderson appeals his conviction for first degree statutory rape, indecent liberties, and bail jumping. He contends that (1) his conviction for statutory rape and indecent liberties instead of first and second degree incest violated his constitutional right to equal protection; and that the trial court erred (2) in admitting the victim's hearsay statement under the child hearsay statute; (3) in refusing to sever the bail jumping count from the statutory rape and indecent liberties counts; and (4) in imposing a consecutive sentence for the bail jumping conviction. We affirm in part and reverse in part.

Robert S. Henderson was charged by information with first degree statutory rape of his stepdaughter, S., and arraigned in October 1984. He was released on his own recognizance and acknowledged the court's order that he

appear for trial on January 8, 1985. When Henderson failed to appear for trial, a bench warrant issued. Henderson subsequently appeared and a new trial date was set. The State then filed an amended information which added an indecent liberties count and a bail jumping count.

After Henderson was arraigned on the amended information, he moved to sever the trial of the bail jumping count from the crimes of sexual abuse. The court referred the matter to the trial judge who later denied Henderson's motion. Also before trial, the court held a hearing pursuant to RCW 9A.44.120 (the child hearsay statute) to determine the admissibility of three hearsay statements made by the victim to three different persons.

Barbara Cheney, S's school nurse, testified that two of S's teachers approached her, concerned about S, who was then 7 years old, because she was very withdrawn and had periodic urinary incontinence. Ms. Cheney testified that she later met with S early in June 1984 to ask her some questions about her family. She thought that S's problems might be related to her sexual abuse, a medical or emotional condition, or to S's relationships with family members. At the interview, Ms. Cheney asked S how she got along with various members of her family. Ms. Cheney testified that when she asked S how she got along with her father, S looked at the floor and replied in a soft voice, "Not very good." S refused to explain why. During the interview, which Ms. Cheney described in detail, she asked S "Who hurt you?" and S answered "My dad." S told Ms. Cheney that her father touched her on "her bottom," and pointed to her genital area. At this point Ms. Cheney stopped questioning S.

Detective John Hinds of the Snohomish County Sheriff's Office testified that he took S's statement in his office with her mother present after he received the case as a sexual abuse referral from Child Protective Services. As Detective Hinds conducted the interview, he wrote down his questions and S's answers, which he described as follows:

I began [the interview] by asking her if she felt she could talk to me. . . .

She seemed nervous and somewhat shy. . . .

I asked her if it would help if I asked her some questions and she gave me the answers. . . .

She said yes . . .

I asked [S], "I need to talk to you about your dad. Do you think you can talk with me?" She responded, "No."

I asked her, "Can I ask you questions and you tell me the answers?" She responded, "Yes."

I asked her, "You talked with a woman from CPS about your dad. Can you tell me what he's been doing?" She responded, "He touches me."

I asked her, "Where?" She responded, "Here," and pointed between her legs toward her vagina.

I asked her, "What does you[r] dad touch you with?" She responded, "His hand."

I asked her, "How does he touch you?" And she responded, "He rubs me there."

I asked her, "Does it hurt when your dad touches you there," referring to her vagina. She answered, "Yes."

I asked her, "Why?" And she indicated—responded, "He sticks his fingers in me."

I asked her, "Does Dad touch you with anything else?" She stated, "No."

I asked her, "Does your dad ask you to touch him at all?" Her answer was "No."

I asked her, "Did Dad tell you anything at all?" She answered, "Not to tell anyone."

I asked her, "How long has your dad been doing this to you?" And she answered, "Since the first grade."

I asked her what grade she is now in. She stated, "Third grade."

I asked her, "Where does this happen?" She answered, "At Dad's house in his bedroom."

I asked her, "How did you get into his bedroom?" She answered, "Dad would pick me up and carry me in there."

I asked her, "Did you . . ." Excuse me. "Did he ask you to go with him into the bedroom?" She answered, "No, he wouldn't say anything."

I asked, "Would Dad say anything to you while he touched you?" She answered, "No."

I asked her what her dad's name was. And she responded, "Robert Henderson."

Detective Hinds noted that S was of normal intelligence. He also testified that although S's mother was present, she did not tell S what to say or cue her in any way. Finally, Detective Hinds testified that S did not answer his questions immediately, but seemed to take time to think about her answers.

Janet Davis, a Child Protective Services (CPS) worker, testified that she interviewed S, wrote a statement about what S told her, but had no independent recollection of the interview at the time of the hearing. Based on the foregoing testimony, the trial court ruled that S's statement to the CPS worker was inadmissible, but her statements to the school nurse and Detective Hinds were admissible.

At trial, S, then age 8, testified after the court determined she was competent. She related that her father, Henderson, had touched her vagina several times in her parents' bedroom, in their camper, and near the well, starting when she was in kindergarten or the first grade. She testified that Henderson touched and rubbed her with his fingers and that it hurt, but she did not testify that Henderson put his finger inside her vagina.

The defense presented no evidence, and the jury convicted Henderson of all counts.

The sexual abuse crimes, counts 1 and 2, occurred prior to July 1984 before the sentencing reform act (SRA) was applicable. The court sentenced Henderson to serve 30 years on the statutory rape count to run concurrently with a 10–year sentence imposed on the indecent liberties count. Pursuant to the SRA, the court then imposed a 6–month sentence with credit for time served for the bail jumping count. The court specifically found that there were no compelling circumstances warranting consecutive sentences, but reasoned that bail jumping was a separate offense and thus should run consecutively to counts 1 and 2.

## ANALYSIS[1]

### I

### EQUAL PROTECTION

Henderson first contends that he was denied equal protection when the prosecutor elected to charge him with statutory rape and indecent liberties instead of first and second degree incest because the statutes are concurrent and penalize the same conduct differently. In addition, Henderson asserts that the prosecutor's decision circumvented legislative intent that the incest statute supersede the statutory rape and indecent liberties statutes.

■ *State v. Hodgson,* 44 Wn. App. 592, 722 P.2d 1336, *review granted,* 107 Wn.2d 1012 (1986) is dispositive of this issue. In *Hodgson,* the court held that a violation of the incest statute is not necessarily a violation of either the statutory rape or indecent liberties statutes and therefore the incest statute is not a special statute that supersedes either the indecent liberties or the statutory rape statutes. *Hodgson,* 44 Wn. App. at 598. The *Hodgson* court concluded that there was no violation of equal protection when the various crimes the prosecutor may choose to charge require proof of different elements. *Hodgson,* 44 Wn. App. at 598. Thus, the prosecutor's decision to charge Henderson with statutory rape and indecent liberties instead of incest did not violate his constitutional right to equal protection, nor did it circumvent legislative intent.

### II

### CHILD HEARSAY EXCEPTION

Henderson next contends that the trial court erroneously admitted S's statement to Detective Hinds that her father stuck his fingers in her vagina because the State failed to

---

[1]Henderson raises several issues in his pro se brief. He contends that (1) he was falsely accused and that he was prejudiced by (2) the court's failure to exclude a nonwitness from the courtroom; (3) the prosecutor's (or defense counsel's) failure to question certain unnamed individuals; and (4) the prosecutor's preparation of the victim witness. We have examined Henderson's contentions and find they are without merit.

prove that the statement was reliable as required by RCW 9A.44.120 and *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

██ ██ RCW 9A.44.120[2] permits the use of an otherwise inadmissible statement by a victim of sexual abuse under the age of 10 when the court finds that the circumstances of the statement provide sufficient indicia of reliability. *State v. Hancock*, 46 Wn. App. 672, 675–76, 731 P.2d 1133 (1987). The trial court's finding that a statement is admissible under RCW 9A.44.120 should not be reversed absent a showing of manifest abuse of discretion. *State v. Frey*, 43 Wn. App. 605, 611, 718 P.2d 846 (1986); *State v. Jackson*, 42 Wn. App. 393, 396, 711 P.2d 1086 (1985); *State v. Slider*, 38 Wn. App. 689, 698, 688 P.2d 538 (1984), *review denied*, 103 Wn.2d 1013 (1985). In exercising that discretion, *Ryan* requires the trial court to consider nine factors bearing on the reliability of an out–of–court statement. *Ryan*, 103 Wn.2d at 175–76. These nine factors must be "substantially met before a statement is demonstrated to be reliable." *State v. Griffith*, 45 Wn. App. 728, 738–39, 727 P.2d 247 (1986).

Henderson attempts to analogize the case sub judice to *Ryan*, where the court held that the victims' hearsay statements were unreliable. We find this case to be distinguishable from *Ryan*. Applying the first factor, S had no apparent motive to lie, unlike the children in *Ryan*. The second factor, the character of the declarant, is inconsequential here as it was in *Ryan*.[3] In assessing the third factor, we note that S told two people that the father stuck his

---

[2]RCW 9A.44.120 provides that:

"A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in . . . criminal proceedings . . . if . . . [t]he court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and . . . [t]he child . . . [t]estifies at the proceedings . . ."

[3]The only evidence before the trial court that could possibly undermine S's veracity was her conflicting testimony about whether she first told her mother or

fingers in her vagina: her mother and Detective Hinds, while the children in *Ryan* initially told only one person of the sexual abuse.

Henderson's argument places great emphasis on the fourth and fifth *Ryan* factors: "(4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness.'" *Ryan,* 103 Wn.2d at 176 (quoting *State v. Parris,* 98 Wn.2d 140, 146, 654 P.2d 77 (1982)). Henderson contends that S's statement was not spontaneous because she made it in response to Detective Hinds' questioning. We believe *Ryan* compels a less narrow definition of "spontaneous," one that considers the entire context in which the child makes the statement. S *volunteered* the information that her father stuck his fingers in her vagina when Detective Hinds asked S why it hurt her when her father touched her vagina. His question was neither leading nor suggestive. Thus, the statement qualifies as "spontaneous."

Henderson also claims that the timing of the statement and the relationship between S and Detective Hinds cuts against admissibility because Detective Hinds was "predisposed" to suspect S had been sexually abused at the time he questioned her and merely sought to confirm his suspicions. Henderson thus analogizes the professional investigator to those with personal involvement like the mothers in *Ryan.* We find Henderson's application of the fifth *Ryan* factor to be incorrect. The *Ryan* court emphasized two important facts: (1) the mothers of the victims were predisposed to confirm their strong suspicions that the defendant had committed indecent liberties on their children when they questioned them; *and* (2) their parental relationship to the children was "understandably of a character [that made] their objectivity questionable." *Ryan,* 103 Wn.2d at 176. By contrast, although Detective Hinds knew of the sexual abuse allegations against Henderson, his relationship

---

the school nurse about her father's sexual abuse. This inconsistency is more indicative of memory than of veracity.

to S was not of a character that made his objectivity questionable: he was an investigating officer who had never met S prior to the time he questioned her.

We decline Henderson's implicit invitation to establish a per se rule that a child's statement made in response to questioning by sexual abuse professionals, including police officers, is automatically unreliable.[4] Professionals are, by definition, trained to be objective in assessing whether a child's complaint merits further investigation, and unlike parents, their perceptions are not impaired by a personal attachment to the child. Thus, we hold that here the *Ryan* factors, taken as a whole, were substantially met.[5] The trial court did not abuse its discretion by finding that S's statement was reliable.

## III
### SEVERANCE

Henderson next contends that the trial court abused its discretion by failing to sever the trial of the bail jumping count from the statutory rape and indecent liberties counts.

CrR 4.4(a)(2) requires a defendant to renew a pretrial motion for severance that was overruled "before or at the close of all the evidence." A defendant who fails to renew his motion to sever waives the issue. *See* CrR 4.4(a)(2). Henderson moved to sever the bail jumping count before trial, but failed to renew his motion at or before the close of trial. He therefore waived the issue.

---

[4]Henderson also attempts to argue that Detective Hinds' interview of S was so suggestive that it falsified S's memory, but he provides no factual support in the record for this contention and thus we do not consider it.

[5]Henderson claims that S's statement also fails the last four *Ryan* factors, which were taken from *Dutton v. Evans*, 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970), a coconspirator case. While these factors are not very helpful in assessing the reliability of child hearsay statements in most sexual abuse cases, here they tend to reinforce, rather than weaken, the trial court's discretionary finding of reliability. S's statement was undeniably an assertion of past fact, but she was available for cross examination regarding her lack of knowledge, and there was no evidence suggesting that her recollection was faulty or that she misrepresented Henderson's involvement.

## IV
### SENTENCING

Henderson contends that his bail jumping sentence should be served concurrently, while the State maintains that the trial court's imposition of a consecutive sentence was proper.

Henderson asserts that the applicable statute is RCW 9.94A.400(1)(a), which provides that:

Except as provided in (b) of this subsection,[6] whenever a person is convicted of two or more offenses, the sentence range for each offense shall be determined by using all other current and prior convictions as criminal history. All sentences so determined shall be served concurrently. Separate crimes encompassing the same criminal conduct shall be counted as one crime in determining criminal history.

Recently, in *State v. Huntley*, 45 Wn. App. 658, 662, 726 P.2d 1254 (1986), the court held that this subsection applies where the trial court imposes sentences for convictions obtained in a single or consolidated proceeding. *Huntley* would seem to direct us to apply this subsection here because Henderson's convictions were obtained in a consolidated proceeding. However, it is evident from the language of subsection (1) that it applies to sentencing of multiple SRA offenses, as was the case in *Huntley*, and not to pre–SRA offenses. The subsection refers to the "sentence range" for each offense and directs that the sentences "so determined" be served concurrently. Since Henderson's sexual abuse crimes were committed prior to July 1, 1984, the effective date of the act, multiple SRA convictions are not present here and thus, the applicability of subsection (1) is questionable.

The State contends that former RCW 9.94A.400(3) applies, which provides that:

Subject to subsections (1) and (2) of this section, whenever a person is sentenced for a felony that was

---

[6]RCW 9.94A.400(1)(b) applies to a person convicted of three or more violent offenses.

committed while the person was not under sentence of a felony, the sentence shall run consecutively with felony sentences previously imposed by any court in this or another state or by a federal court, unless the court pronouncing the subsequent sentence expressly orders that they be served concurrently.[7]

However, we are uncertain whether subsection (3) applies here where the trial court imposed the sentences at the same time. An interpretation of "sentences previously imposed" that includes sentences imposed by the same trial court just moments before strains the language of this subsection.

■ Since we are unable to discern which subsection applies to the facts presented here, we resort to the "rule of lenity." That rule requires us to adopt the interpretation most favorable to the defendant in construing ambiguous criminal statutes. *State v. Garrison*, 46 Wn. App. 52, 54, 728 P.2d 1102 (1986); *State v. Welty*, 44 Wn. App. 281, 283, 726 P.2d 472, *review denied*, 107 Wn.2d 1002 (1986). Accordingly, we reverse the trial court's imposition of a consecutive sentence and order that the bail jumping sentence be served concurrently with the other sentences.

Affirmed in part, reversed in part.

SCHOLFIELD, C.J., and SWANSON, J., concur.

Reconsideration denied August 14 and September 22, 1987.

Review denied by Supreme Court November 3, 1987.

---

[7]The 1986 revision also completely reverses the presumption, requiring that sentences so imposed run *concurrently*, unlike the former 1985 section which required the sentences to run *consecutively*. Both parties agree that the 1985 version of the SRA is applicable here.