[No. 22275-9-I. Division One. February 20, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. KENDRICK R. BORLAND, JR., *Appellant.*

---

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Denis O'Leary, Deputy,* for respondent.

FORREST, J.—Kendrick P. Borland, Jr., appeals from his conviction of statutory rape in the first degree, claiming that the trial court erred in finding that the 4–year–old complaining witness was competent to testify, and in finding that her out–of–court statements were admissible under the child hearsay statute. We affirm.

On January 8, 1988, Borland was charged with one count of statutory rape in the first degree. The trial court conducted a hearing to determine the testimonial competence of the complaining witness, D.W., who was 4 years 1 month old at the time of trial. Following questioning by both the trial judge and the prosecuting attorney, the court determined that D.W. was competent to testify.

On the same day, the court held a hearing to determine the admissibility of out–of–court statements made by D.W. to her mother and her grandmother following the alleged incidents. The court ruled that these statements were admissible under the child hearsay statute, RCW 9A.44-.120.[1] Following these rulings, Borland waived his right to a jury trial.

---

[1] **9A.44.120 Admissibility of child's statement—Conditions.** A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington if:

"(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

"(2) The child either:

"(a) Testifies at the proceedings; or

Pursuant to an agreement between counsel, D.W. did not testify at trial.[2] D.W.'s out–of–court statements implicating Borland were admitted through the testimony of her mother and her grandmother. Borland did not object to the admission of these statements. The court found Borland guilty as charged, and he appeals.

## WAS D.W. COMPETENT?

■■ The requirements for determining the competency of a child witness, as formulated in *State v. Allen*[3] and applied to child hearsay in *State v. Ryan*[4] are: (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which she is to testify; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words her memory of the occurrence; and (5) the capacity to understand simple questions about it. This is a close case. Borland identifies portions of D.W.'s testimony that show difficulty in responding to questions, inconsistencies and uncertainty in distinguishing between truth and error. Other portions of the testimony do show her ability to distinguish between the truth and a lie, to remember events contemporaneous with the charged acts, to express her memory, and to answer simple questions about such acts. Although the exercise of the trial judge's discretion must be based on the

---

"(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted, only if there is corroborative evidence of the act.

"A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement."

[2] See footnote 13.

[3] 70 Wn.2d 690, 692, 424 P.2d 1021 (1967).

[4] 103 Wn.2d 165, 172, 691 P.2d 197 (1984).

entire testimony, the court is entitled to select which portions have the greater persuasive value on the ultimate issue. There is probably no area of law where it is more necessary to place great reliance on the trial court's judgment than in assessing the competency of a child witness. The trial judge is in a position to assess the body language, the hesitation or lack thereof, the manner of speaking, and all the intangibles that are significant in evaluation but are not reflected in a written record.[5] Accordingly, a trial court's determination of the competency of a child witness will not be reversed on appeal absent a manifest abuse of discretion.[6] After a careful review of D.W.'s testimony, we find no such abuse of discretion.

## WERE D.W.'S OUT–OF–COURT STATEMENTS ADMISSIBLE?

Borland also asserts that the court erred in admitting D.W.'s out–of–court statements because the requirements of RCW 9A.44.120 and State v. Ryan[7] were not satisfied.

### 1. Failure of D.W. To Testify

Borland first contends that because D.W. did not testify and because there was no showing that she was unavailable as a witness, her hearsay statements were improperly admitted, relying on State v. Ryan, supra, and State v. Clark.[8] Before admitting child hearsay statements, RCW 9A.44.120(2) requires that the child either testify or be

---

[5]State v. Przybylski, 48 Wn. App. 661, 664–65, 739 P.2d 1203 (1987); State v. Sardinia, 42 Wn. App. 533, 537, 713 P.2d 122, review denied, 105 Wn.2d 1013 (1986).

[6]State v. Hunt, 48 Wn. App. 840, 843, 741 P.2d 566, review denied, 109 Wn.2d 1014 (1987); State v. Frey, 43 Wn. App. 605, 611, 718 P.2d 846 (1986); State v. Walker, 38 Wn. App. 841, 846, 690 P.2d 1182 (1984), review denied, 103 Wn.2d 1012 (1985).

[7]103 Wn.2d 165, 691 P.2d 197 (1984).

[8]53 Wn. App. 120, 127, 765 P.2d 916 (1988), review denied, 112 Wn.2d 1018 (1989).

unavailable.[9] The facts here present a situation not specifically addressed by the statute: D.W. was competent and physically available to testify but was not called to the stand and did not testify.

The purpose of RCW 9A.44.120 is to permit the use of reliable child hearsay while at the same time protecting the defendant's constitutional right of confrontation.[10] The testimony, and opportunity for cross examination, of the child witness at trial satisfies the defendant's constitutional right. Where the child witness is unavailable, the corroboration requirement serves as an accepted substitute for cross examination.[11] Where, as here, the witness is competent and physically available, we see no reason to compel the testimony of a witness that neither the State nor the defendant chooses to call. Constitutional rights, including confrontation rights, may be waived.[12] A defendant can waive cross examination after a witness has testified. Similarly, a defendant can waive the right to call a witness who is available. That is the case before us.[13]

---

[9]RCW 9A.44.120(2) states:

"The child either:

"(a) Testifies at the proceedings; or

"(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act."

[10]*State v. Ryan,* 103 Wn.2d at 169–70.

[11]*State v. Slider,* 38 Wn. App. 689, 697, 688 P.2d 538 (1984), *review denied,* 103 Wn.2d 1013 (1985).

[12]*State v. Nelson,* 103 Wn.2d 760, 766–67, 697 P.2d 579 (1985); *State v. Harper,* 33 Wn. App. 507, 510, 655 P.2d 1199 (1982).

[13] "MR. O'LEARY [Prosecuting attorney]: . . . counsel is trying to incorporate other statements which may have been made outside of the trial setting, and that is inappropriate.

"THE COURT: Well, [D.W.] did not testify at the trial.

"MS. SPECTOR [Defense counsel]: "That's very clear, your Honor. It would have been defense counsel's—it was an agreed situation, where [D.W.] did not have to testify, but at the same time, I think the state would have had a significant amount of difficulty, had it called [D.W.] again."

Each side may have valid reasons for not calling an available child witness. The prosecutor, among other reasons, may properly wish to spare the child the stress and trauma of in–court testimony. Defense counsel may believe that hostile examination of a child witness may be counterproductive, especially in a jury trial, and may prefer to urge misperception or misunderstanding by the child or distortion by the witness relating the out–of–court statements. Whatever the reasons, the decision is for each of the parties to make, not for the court to make for them.

We hold that RCW 9A.44.120(2) is satisfied when the child witness is both competent and physically available to testify. Our use of the term "competent" embraces both senses in which the term has been used: that the child has an ability "to receive just impressions of the facts concerning the event"[14] and that the child meets the standards for testimonial competence discussed previously.[15] Actual testimony is not required as a condition of admission of the out–of–court statements. Testimony by the child witness may be waived by the defendant, but the fact of such waiver should be clearly made on the record.[16]

## 2. Indicia of Reliability

 RCW 9A.44.120 requires that in order for out–of–court statements by a child witness to be admitted at trial,

---

[14]*State v. Ryan,* 103 Wn.2d at 173.

[15]*See State v. Allen,* 70 Wn.2d 690, 692, 424 P.2d 1021 (1967), and *State v. Hunt,* 48 Wn. App. 840, 844–45, 741 P.2d 566, *review denied,* 109 Wn.2d 1014 (1987).

[16]Although not required in this case, we note that there was substantial corroboration as to the act in the testimony of Patricia Borland, the defendant's mother. She testified that on or about September 25, 1987, Borland came over to do some laundry. After he put the laundry in, Borland came back upstairs and was playing with D.W. on the couch, the child was jumping and giggling with him. D.W. followed the defendant downstairs. After 15 to 20 minutes Patricia called downstairs. Borland said everything was fine. When he did not come up she went downstairs. She saw them in bed and saw him push D.W. away. He was lying on his back on the bed watching television. Patricia told him to get off of the bed. As he put his feet down on the floor, he still had part of a blanket around him.

the court must find that "the time, content, and circumstances of the statement provide sufficient indicia of reliability". In *State v. Ryan, supra,* the court identified nine factors for assessing the indicia of reliability required for the admissibility of out–of–court statements under RCW 9A.44.120:

> "(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness." [*State v. Parris,* 98 Wn.2d 140, 146, 654 P.2d 77 (1982)] . . . [and] (1) the statement contains no express assertion about past fact, (2) cross examination could not show the declarant's lack of knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement (in that case spontaneous and against interest) are such that there is no reason to suppose the declarant misrepresented defendant's involvement. [*Dutton v. Evans,* 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970)].

*Ryan,* 103 Wn.2d at 175–76.

Borland argues that the trial court abused its discretion in finding that the statements made by D.W. to her mother and grandmother satisfied these nine factors. Borland attempts to analogize his case to *Ryan.* In *Ryan,* two young victims were questioned about the source of some candy they had brought home. The children, who had been forbidden to accept candy, initially said that someone in the street had given it to them, but later said that the defendant had given it to them in exchange for permitting certain sexual contact. The trial court concluded that the hearsay statements by the children did not satisfy the nine criteria listed above and therefore lacked indicia of reliability.[17]

A review of the record in this case indicates that it is distinguishable from *Ryan.* First, D.W. had no apparent motive to lie. Second, there was no challenge to D.W.'s general character. Third, D.W. told both her mother and her grandmother that Borland had sexually abused her. In *Ryan,* each child told only one person.

---

[17]*State v. Ryan,* 103 Wn.2d at 176–77.

Fourth, while Borland argues that D.W.'s statements were not "spontaneous" because they were made in response to questioning, *State v. Henderson*[18] held that "*Ryan* compels a less narrow definition of 'spontaneous', one that considers the entire context in which the child makes the statement". The court in *Henderson* stated that the child witness:

> *volunteered* the information that her father stuck his fingers in her vagina when Detective Hinds asked [the child] why it hurt her when her father touched her vagina. His question was neither leading nor suggestive. Thus, the statement qualifies as "spontaneous."

*State v. Henderson*, 48 Wn. App. at 550. Likewise, D.W's statements were made in response to questions that were neither leading nor suggestive.[19] Thus, D.W.'s statements were "spontaneous".

Fifth, although Borland claims that the witnesses were predisposed to believe D.W. because they were her mother and her grandmother, this case presents different facts than *Ryan*. The person implicated by the statements in *Ryan* was a stranger. Borland was closely related to both witnesses: one was his sister, and the other was his mother. Although the witnesses may have been predisposed to believe D.W., they would also presumably be reluctant to verify false allegations against Borland.

In addition, the observation of D.W.'s conduct and the observation of Patricia Borland as to one incident[20] are consistent with the content of the hearsay statement and supportive of its reliability. The trial court did not err in finding that the first five of the *Ryan* factors are clearly satisfied.

---

[18] 48 Wn. App. 543, 550, 740 P.2d 329, *review denied,* 109 Wn.2d 1008 (1987).

[19] "Q. So what did you ask her?
"A. I asked her who taught her that, who showed her how to do that.
"Q. What did she say?
"A. She said Uncle Kenny."

[20] See footnote 16.

### 3. *Dutton* Factors

The application of the last four of the *Ryan* factors, which were derived from *Dutton v. Evans,*[21] is less satisfactory. This results in large part from the factual context in which the *Dutton* case arose. In *Dutton,* the defendant Evans had originally been charged jointly with other defendants with murder. He was tried separately, and at that trial a witness was allowed to testify as to a statement made by one of the other defendants that "'[i]f it hadn't been for that dirty son–of–a–bitch Alex Evans, we wouldn't be in this now.'"[22] The statement was admitted under the Georgia coconspirator exception to the hearsay rule. The Court held that although related, the hearsay evidentiary rule and the constitutional confrontation clause could not be equated; for example, some hearsay admissible in civil proceedings would be inadmissible in criminal proceedings as violative of a defendant's confrontation rights. In ruling that Evans's confrontation rights had not been abridged, the four "*Dutton,* factors" were set forth.

As a preliminary matter, we note that the *Dutton* factors were enunciated in a situation where the declarant did not testify.[23] Accordingly, the *Dutton* factors would logically be applied only to RCW 9A.44.120(2)(b), where the declarant is unavailable as a witness. In those situations, RCW 9A.44.120 incorporates a corroboration requirement that has been held sufficient to satisfy defendant's constitutional right of confrontation.[24]

---

[21]400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970).

[22]*Dutton v. Evans,* 400 U.S. at 77.

[23]Interestingly, the declarant in the *Dutton* case could have been subpoenaed to testify, but Evans's counsel concluded that this would not have been in his client's best interests. 400 U.S. at 88 n.19.

[24]*State v. Jones,* 112 Wn.2d 488, 492, 772 P.2d 496 (1989).

*Dutton* was first applied in Washington in the factual situation of a nontestifying declarant.[25] In each case, out–of–court statements—in *Smith* an audio tape, in *Kreck* a business record, and in *Boast* the declarant's statements to the witness—were challenged as a denial of confrontation rights. The focus of the court's concern is well summarized in the following language from *Kreck*:

> As *Dutton* puts it:
>> The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth–determining process in criminal trials by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement."
>
> *Dutton v. Evans, supra* at 89. In Congressional Research Service (Library of Congress), *The Constitution of the United States of America—Analysis and Interpretation* 1214 (1973), the rule in *Dutton* is explained:
>> [T]his is to be ascertained in each case by focusing on the reliability of the proffered hearsay statement, that is, by an inquiry into the likelihood that cross–examination of the declarant at trial could successfully call into question the declaration's apparent meaning or the declarant's sincerity, perception, or memory.

*State v. Kreck,* 86 Wn.2d at 118.

As incorporated into *Ryan* however, the *Dutton* factors purport to apply both where the child declarant testifies and where the child declarant does not testify. This makes their application awkward.

Turning to the four *Dutton* factors, the first factor requires that the statement "contains no express assertion about past fact".[26] As noted in *State v. Stange,*[27] this factor will never be satisfied in the child hearsay context. It is a cautionary concern rather than a factor to be weighed.

---

[25]*State v. Smith,* 85 Wn.2d 840, 849–50, 540 P.2d 424 (1975); *State v. Kreck,* 86 Wn.2d 112, 117–18, 542 P.2d 782 (1975); *State v. Boast,* 87 Wn.2d 447, 453–54, 553 P.2d 1322 (1976).

[26]*Ryan,* 103 Wn.2d at 176.

[27]53 Wn. App. 638, 646–47, 769 P.2d 873 (1989).

The second *Dutton* factor requires that "cross examination could not show the declarant's lack of knowledge".[28] In commenting on this factor, *State v. Gitchel*[29] stated:

[H]owever, cross examination would not have shown R's lack of knowledge under these circumstances, as R demonstrated that she did not respond to questions in a courtroom setting. Even if she were capable of being cross–examined, the number of times and the circumstances in which she repeated her statement that her daddy hurt her or put his ponytail in her anus tend to establish that R's description of what occurred was credible.

Read in isolation, the first quoted sentence might be interpreted to mean that when the child cannot be cross–examined in the courtroom that this *Dutton* factor is satisfied. This would be incorrect. In *Dutton* it was the overwhelming evidence of the declarant's knowledge that satisfied the court that cross examination could not show the lack of such knowledge and, therefore, the defendant's right of confrontation was not abridged.[30] However, we interpret the second quoted sentence to be consistent with *Dutton* in finding that the independent evidence was sufficiently strong to satisfy this *Dutton* requirement. *Dutton* clearly holds that overwhelming evidence of knowledge may justify the lack of cross examination. Where such evidence is lacking, however, the *Dutton* cross examination factor may not be satisfied.

It is true that the child would know from personal experience what physically happened to her and, in that limited sense, cross examination could not show a lack of knowledge. This fact would always be present. If this alone satisfied the knowledge factor, the factor would always be met and hence be superfluous. Cross examination in some cases can create doubt as to the time and location of the acts, the

---

[28]*Ryan*, 103 Wn.2d at 176.

[29]41 Wn. App. 820, 828, 706 P.2d 1091, *review denied*, 105 Wn.2d 1003 (1985).

[30]Clearly the inability to cross–examine can never satisfy the knowledge requirement of *Dutton*. This must come from other evidence.

identity of the perpetrator, and whether the acts that the child relates in fact constitute abuse. It will be rarely, if ever, that the trial judge can conscientiously find that cross examination might not show lack of knowledge. Accordingly, as with the first *Dutton* factor, the second *Dutton* factor should be considered an inherent risk in the admission of the out–of–court statements of a nontestifying child, not as a factor for evaluating whether the statements should be admitted. The meaningful evaluation in such cases will focus on the corroboration that is required.[31] Functionally, this serves the same purpose as the proof of knowledge in *Dutton.*

The third *Dutton* factor requires that "the possibility of the declarant's faulty recollection is remote".[32] This concern is already embraced within the fifth *Parris* factor: "the timing of the declaration".[33]

Finally, the fourth *Dutton* factor requires that:

> the circumstances surrounding the statement . . . are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*Ryan,* 103 Wn.2d at 176. The statement admitted in *Dutton* was spontaneous and made against the declarant's penal interest. A child's out–of–court statement recounting sexual abuse will never be against the child's penal interest. The spontaneity of the statement is specifically covered in the fourth *Parris* factor: "whether the statements were made spontaneously".[34] The other "circumstances surrounding the statement" are amply covered by the third and fifth *Parris* factors.

---

[31] RCW 9A.44.120(2)(b) in part reads: "*Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act."

[32] *Ryan,* 103 Wn.2d at 176.

[33] *Ryan,* 103 Wn.2d at 176.

[34] *Ryan,* 103 Wn.2d at 175–76.

For these reasons, we find the *Dutton* factors are not useful in determining which statements are admissible under RCW 9A.44.120.[35] Nonetheless, they remain part of the Washington rule for admission until changed by the Supreme Court. As indicated in our analysis of the five *Parris* factors, we are satisfied that D.W.'s out-of-court statements had sufficient indicia of reliability. It is not necessary that all the *Ryan* factors be present.[36] It is sufficient that they be substantially met.[37] Those *Dutton* factors that can be met, were met; those that were not met ("past fact" and "lack of knowledge") can rarely if ever be met. If the satisfaction of those factors were treated as essential, RCW 9A.44.120 would be rendered ineffective.

It is within the discretion of the trial court to assess the applicability of the *Ryan* factors[38] We find no error in the trial court's determination that the out-of-court statements contained sufficient indicia of reliability to support their admission under RCW 9A.44.120.

Affirmed.

COLEMAN, C.J., and WINSOR, J., concur.

Review denied at 114 Wn.2d 1026 (1990).

---

[35]This conclusion was presaged in footnote 5 of *State v. Henderson*, 48 Wn. App. 543, 551, 740 P.2d 329, *review denied*, 109 Wn.2d 1008 (1987).

[36]*State v. Justiniano*, 48 Wn. App. 572, 580, 740 P.2d 872 (1987).

[37]*State v. Griffith*, 45 Wn. App. 728, 738–39, 727 P.2d 247 (1986).

[38]*State v. Jackson*, 42 Wn. App. 393, 396, 711 P.2d 1086 (1985); *State v. Henderson, supra* at 549.