# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47736-0-II |
| Respondent, | |
| v. | |
| ALEXANDER PAUL ANDREW KNIGHT, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Alexander Knight appeals his jury trial conviction for one count of first degree child molestation. Because the trial court properly found sufficient indicia of reliability to admit the victim's statements and because the State presented sufficient evidence for a rational jury to find Knight had sexual contact with the victim, we reject Knight's contrary arguments, and we affirm the conviction.

FACTS

I. BACKGROUND FACTS

In June 2014, nine-year-old M.P.[1] went to play with her friend and neighbor, K.K. Knight, who is related to K.K., was at K.K.'s home during the visit.[2] After M.P. returned home, Knight and K.K. appeared at M.P.'s door to ask Truly P., M.P.'s mother, if M.P. was home. They left when M.P. refused to come to the door. M.P. then told Truly that Knight had touched her buttocks and tried to kiss her while she was at K.K.'s home that day. M.P. rubbed her hand up and down between her buttocks to show her mother what happened. M.P. later described Knight's hand as rubbing closer and closer to her "perineum," the "flap of skin" between "your private area and your butt." 6 Report of Proceedings (RP) at 678. As it went closer to her perineum, Knight's hand also went deeper.

Truly called 911 and brought M.P. to a police station where Detectives Julie Carpenter and Deanna Watkins interviewed M.P. The State charged Knight with first degree child molestation.

II. *RYAN*[3] HEARING

Before trial, the State moved to admit into evidence M.P.'s statements to her mother and the detectives describing the sexual contact. At the hearing, M.P., her mother, and the detectives

---

[1] We use initials instead of names for victims of sex crimes to protect their privacy. Gen. Order 2011-1 of Division II, In re Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases (Wash. Ct. App.), http://www.courts.wa.gov/appellate_trial_courts. Also, because of the nature of this case, some confidentiality is appropriate. Accordingly, the last name of M.P.'s mother will not be used in the body of this opinion.

[2] Knight is more than 19 years older than M.P.

[3] *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

testified.  M.P. testified that she knew the difference between the truth and a lie and recounted what she told her mother and the detectives.  She told the court that Knight touched "[her] behind" and asked her "to give him a kiss."  1 RP at 26.  Knight limited his cross-examination of M.P. to a series of questions attempting to determine whether M.P.'s answers had been coached.

Truly testified that M.P. sat quietly when she returned home from K.K.'s house until Knight, accompanied by K.K., knocked on Truly's door about 45 minutes later.  When M.P. heard Knight's voice, M.P. "curled up" and seemed stressed.  1 RP at 21.  Knight inquired if M.P. was home so that K.K. could ask her a question.  Truly asked M.P. twice if she wanted to go outside, but M.P refused.  After Knight left, Truly asked M.P. what was wrong, but M.P. did not want to talk and said she was "'scared.'"  1 RP at 18.  M.P. eventually told her mother that Knight had "'touched [her] butt'" and "'tried to kiss [her],'" and M.P. ran her hand "up and down the crack of her bottom" to show her mother how Knight touched her.  1 RP at 18.

Detectives Watkins and Carpenter each testified that they had been trained to interview young children without asking suggestive questions.  When the detectives interviewed M.P., they had ensured that M.P. knew what a lie was and the importance of telling the truth and not guessing.

The trial court listened to the recording of M.P.'s interview.  During the interview, M.P. told the detectives that while K.K.'s father went to the store that day, Knight had grabbed her and tickled her roughly.  Knight put her on his lap and rubbed his hand "up and down [her] butt" over her clothes.  Ex. 2 at 13.  As Knight touched M.P., his hand neared her "perineum."[4]  Ex. 2 at 21.

---

[4] M.P. showed the detectives how Knight touched her.  Detective Carpenter described the motion that M.P. demonstrated as a "cupping" or "spooning motion with [M.P.'s] full hand" that went "back and forth."  1 RP at 45.

The rubbing made her feel "weird"; it lasted for about 10 seconds. Ex. 2 at 17. Then Knight turned M.P. around and told her to kiss him. M.P. stood up instead. Knight told her not to tell anyone or he would get into trouble. When K.K.'s father returned home, M.P. left.

Knight challenged the admission of a statement that M.P. made to the detectives for lack of spontaneity. Knight argued that Detective Watkins's question of whether Knight had told M.P. to keep the incident a secret suggested M.P.'s answer: that Knight told her that he would get into trouble if she told anyone. Knight also noted a "suggestion" that M.P. kissed Knight, but said that he "[did not] know" if that suggestion amounted to M.P.'s having a motive to lie. 1 RP at 96. Knight agreed that M.P. was "clearly competent" to be a witness. 1 RP at 94.

The trial court ruled that the statements M.P. made to her mother and the detectives had a "fairly high level of indicia of reliability." 1 RP at 109. The trial court determined that there was no motive for M.P. to lie and there was no reason to question M.P.'s credibility or character. The statements were consistent with M.P.'s testimony at the hearing, were made freshly after the incident, and were not suggested by the detectives' questioning. The trial court found M.P. "obvious[ly]" competent and admitted the statements. 1 RP at 108.

### III. TRIAL

Knight was tried in April 2015.[5] M.P.'s neighbor, Brandy Jennings; Truly; M.P.; and Detectives Watkins and Carpenter testified for the State. Jennings testified that on the day M.P. went to K.K.'s house, Jennings watched K.K. run back to Truly's residence. Knight called after M.P. to try to talk to her. M.P. paused for only a few seconds before she continued inside. The

---

[5] Knight's first trial resulted in a mistrial.

interaction seemed strange to Jennings. Truly, M.P., and the detectives testified consistently with their statements at the *Ryan* hearing. Truly added that M.P. had come home unusually early from K.K.'s that day. The jury heard the recording of the detectives' interview of M.P.

At the close of the State's case, Knight moved for dismissal based on the State's failure to prove an element of child molestation—that there was sexual contact. The trial court denied the motion because of the evidence that Knight rubbed M.P. closer and closer to her perineum and that Knight requested that M.P. kiss him.

Knight testified that he never touched M.P.'s bottom and that M.P. kissed him on the lips while he was playing with her and K.K. Knight said he immediately reprimanded M.P. He denied going outside to speak to M.P. after she left. Knight claimed that he and K.K. went to M.P.'s house to ask her if she wanted to come to the park with them.

The jury found Knight guilty of first degree child molestation. Knight appeals, seeking reversal of his conviction.

ANALYSIS

I. CHILD HEARSAY EXCEPTION

A. M.P.'S STATEMENTS WERE PROPERLY ADMITTED

Knight claims that the trial court improperly admitted into evidence, under RCW 9A.44.120 and *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984), M.P.'s statements to her mother and the detectives. We disagree.

We review the trial court's decision to admit child hearsay statements under RCW 9A.44.120 for abuse of discretion. *State v. C.J.*, 148 Wn.2d 672, 686, 63 P.3d 765 (2003). "A trial court abuses its discretion only when its decision is manifestly unreasonable or is based on

untenable reasons or grounds." *C.J.*, 148 Wn.2d at 686 (citing *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)). It is the trial judge who is best able to see the witness while she testifies, notice her manner, and consider her capacity and intelligence. *State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967). Therefore, the trial court is in the best position to make credibility determinations.

RCW 9A.44.120 allows the admission of an otherwise inadmissible statement made by a child under the age of 10 describing "any act of sexual contact performed . . . on the child" if the child testifies at the criminal proceedings. The court must find that the "time, content, and circumstances of the statement provide sufficient indicia of reliability." RCW 9A.44.120(1). *Ryan* provides nine factors to guide the court's analysis in assessing the reliability of the statement at the time of its making. 103 Wn.2d at 175-76. The *Ryan* factors are the following:

> "(1) [W]hether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; . . . (5) the timing of the declaration and the relationship between the declarant and the witness"[;] . . . [(6)] the [lack of any] express assertion about past fact[; (7) whether] cross examination could not show the declarant's lack of knowledge[; (8) whether] the possibility of the declarant's faulty recollection is remote[; and (9) whether] the circumstances surrounding the statement . . . are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

103 Wn.2d at 175-76 (quoting *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982); citing *Dutton v. Evans*, 400 U.S. 74, 88-89, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970)).

Not every factor needs to be met for a statement to be sufficiently reliable; the factors need only be "'substantially met.'" *State v. Woods*, 154 Wn.2d 613, 623-24, 114 P.3d 1174 (2005) (quoting *State v. Swan*, 114 Wn.2d 613, 652, 790 P.2d 610 (1990)).

Knight challenges the admissibility of the statements under seven of the nine *Ryan* factors.

1.    APPARENT MOTIVE TO LIE

Knight challenges the first factor—apparent motive to lie.  He argues that he reprimanded M.P. for kissing him and that this reprimand motivated her to fabricate a story placing the blame on Knight.  But at the *Ryan* hearing, Knight did not testify or otherwise offer his version of events.  Although there was a "suggestion" that M.P. had kissed Knight, Knight never developed that suggestion at the *Ryan* hearing.

The trial court found no motive to lie because at the time of the incident, there was no indication that M.P. had any animosity toward Knight.  The trial court did not abuse its discretion by finding this factor favored admissibility.

2.    DECLARANT'S GENERAL CHARACTER

Knight challenges the second factor—the declarant's general character.  He argues that "the record suggests" that M.P. was vague or could not recall some details.  Am. Br. of Appellant at 17.  But he does not reference any particular portion of M.P.'s testimony and at the *Ryan* hearing, Knight's counsel made no argument about this factor.  Because Knight fails to make more than a conclusory argument, unsupported by citation to the record or legal authority, and he failed to raise the challenge below, his argument fails.

3.    WHETHER MULTIPLE PEOPLE HEARD THE STATEMENTS

Knight challenges the third factor—whether multiple people heard the statements.  He argues that this factor weighs against admission.  Knight admits that M.P. repeated the statements she made to her mother.  But he argues that the third factor favors exclusion because the statements were initially made to only one person.  The third factor, however, is met when a child tells a

substantially similar account to multiple people sequentially. *State v. Kennealy*, 151 Wn. App. 861, 883, 214 P.3d 200 (2009).

At the *Ryan* hearing, Knight made no argument under this factor; he admitted that "[m]ore [than one person] did hear [M.P.'s statements]." 1 RP at 96. As the trial court determined, the third factor was satisfied because M.P. had told her mother and the detectives separate, consistent stories. It was not an abuse of discretion to find this factor favors admissibility of the statements.

4.  SPONTANEITY

Knight challenges the fourth factor—the spontaneity of the victim's statements made to the detectives. This challenge fails.

Statements made in response to questions that are neither leading nor suggestive are spontaneous under *Ryan*. *Swan*, 114 Wn.2d at 649; *State v. Henderson*, 48 Wn. App. 543, 550, 740 P.2d 329 (1987). Here, the detectives testified at the *Ryan* hearing (and the recording of M.P.'s interview corroborates their testimony) that the detectives asked open-ended and nonleading questions of M.P. Knight does not claim that any particular question was leading or suggestive nor that any particular answer lacked spontaneity. Instead Knight claims that *any* statements to an investigating police officer must lack spontaneity. He cites no authority for that position.

The trial court did not abuse its discretion when it concluded that M.P.'s statements were not suggested by the detectives. Thus, this factor favors admissibility.

5.  THE TIMING OF THE STATEMENT AND RELATIONSHIP OF THE DECLARANT TO THE WITNESS

Knight challenges the fifth factor—the timing of the statement and the relationship of the victim to the testifying witness. He argues that this factor favors him based on his trial testimony that M.P. had a motivation to lie to avoid getting into trouble herself. But as stated, there was no

evidence presented at the *Ryan* hearing that supported a finding that the victim had a motivation to lie. At the hearing, Knight made no concrete argument challenging the timing of M.P.'s statements or her relationship with the witnesses, although he said "all sorts of theoretical arguments" could be made. 1 RP at 97.

Under this factor, a witness occupying a position of trust with the child enhances the reliability of a statement made by the child to that witness. *Kennealy*, 151 Wn. App. at 884. Police officers typically occupy positions of trust. *Kennealy*, 151 Wn. App. at 884. Here, M.P. made her statements to her mother and two police officers, all people occupying positions of trust. It was not an abuse of discretion to find this factor favored admissibility of the statements.

6. THE LIKELIHOOD THE DECLARANT'S RECOLLECTION IS FAULTY

Knight challenges the eighth *Ryan* factor—whether the possibility is remote that the declarant's recollection was faulty. He argues that this factor favors exclusion. Again, without specifying a particular part of M.P.'s testimony, Knight claims that her testimony was selective, implying her recollection was faulty at the hearing.

In *State v. Leavitt*, the court held that the proper focus is the passage of time between the incident and the disclosure, not the passage of time before the testimony repeating the disclosure. 111 Wn.2d 66, 75, 758 P.2d 982 (1988). In *Woods*, the court discussed whether the victims had normal memories and abilities to perceive at the time of the hearing. 154 Wn.2d at 624.

Here, M.P.'s disclosures occurred on the same day as the molestation. M.P.'s testimony at the hearing also was consistent with her earlier statements. Thus, under both the *Leavitt* and *Woods* analyses, it was not an abuse of discretion to find this factor favored admissibility of the statements.

7.      NO REASON TO MISREPRESENT THE DEFENDANT'S INVOLVEMENT

Knight challenges the ninth factor—whether the circumstances surrounding the statement imply the declarant had no reason to misrepresent the defendant's involvement. This mirrors his challenge to the first factor. But because no motivation-to-lie evidence was presented at the *Ryan* hearing, the trial court did not abuse its discretion in finding this factor favored admissibility.

8.      LACK OF DISCUSSION OF EACH *RYAN* FACTOR ON THE RECORD

In addition to arguing that the trial court came to the wrong conclusion in applying the *Ryan* factors, Knight argues that the trial court erred when it did not refer to each *Ryan* factor individually. "Not every *Ryan* factor must be satisfied in order for the trial court to find a child's out of court statements reliable." *Woods*, 154 Wn.2d at 625. Thus, the trial court was not required to individually refer to each *Ryan* factor when it determined whether to admit M.P.'s statements.

Here, the trial court properly applied the *Ryan* test and relied on the evidence that M.P. held no animosity toward Knight before the incident, that M.P.'s statements were consistent, that her disclosure to her mother happened on the same day as the molestation, and that the detectives' questions lacked suggestiveness. Considering the evidence before it at the *Ryan* hearing, the trial court did not abuse its discretion when it determined M.P.'s statements had a "high level" of reliability and, therefore, were admissible at trial.

9.      COMPETENCY

Knight asserts that the trial court should have considered M.P.'s competency as part of the *Ryan* reliability analysis. He argues that the trial court did not consider competency when it conducted the analysis, although he acknowledges that the trial court found M.P. to be a competent witness. We disagree.

The trial court need not determine whether a child is competent as a precondition to the admissibility of the child's hearsay statements under the indicia-of-reliability analysis. *C.J.*, 148 Wn.2d at 684. "Admissibility under the statute does not depend on whether the child is competent to take the witness stand, but on whether the comments and circumstances surrounding the statement indicate it is reliable." *C.J.*, 148 Wn.2d at 685. The trial court was not required to consider M.P.'s competency in determining whether to admit her hearsay statements. We reject this argument.

In conclusion, the trial court properly considered the *Ryan* factors and did not abuse its discretion when it admitted M.P.'s hearsay statements.[6]

## II. SUFFICIENCY OF THE EVIDENCE

Knight challenges the sufficiency of the evidence to convict him of first degree child molestation. He claims that even if a touching occurred, it was over M.P.'s clothing; thus, additional evidence of sexual gratification is required to prove a sexual contact occurred.[7] We disagree because there was sufficient evidence to support a jury finding of sexual contact and sexual gratification.

When a defendant challenges the sufficiency of the evidence supporting his conviction, we must view the evidence in the light most favorable to the State and determine whether any rational

---

[6] Because we conclude that the trial court did not err when it admitted M.P.'s hearsay statements, we do not reach Knight's argument that admission of M.P.'s statements was prejudicial error.

[7] Portions of Knight's argument derive from his account that the touching occurred accidentally while he tickled M.P. and that M.P. kissed him. But to the extent that Knight rests his argument on trial testimony contradicted by the State's evidence, Knight misconstrues the standard for a sufficiency of the evidence claim.

jury could have found the essential elements of the crime beyond a reasonable doubt. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016) (citing *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). The defendant admits the truth of all the State's evidence in making such a challenge. *Farnsworth*, 185 Wn.2d at 775.

An essential element of the crime of child molestation is "sexual contact." RCW 9A.44.083(1). "'Sexual contact'" is a touching of sexual or other intimate parts "for the purpose of gratifying sexual desire." RCW 9A.44.010(2). Thus, an implicit requirement of convicting a defendant of child molestation is that the State prove the defendant acted with the purpose of sexual gratification. *State v. Stevens*, 158 Wn.2d 304, 309-10, 143 P.3d 817 (2006) (citing *State v. Lorenz*, 152 Wn.2d 22, 36, 93 P.3d 133 (2004)).[8]

Intimate parts are those that a person of common intelligence would know are improper to touch. *In re Welfare of Adams*, 24 Wn. App. 517, 520, 601 P.2d 995 (1979). Proof that an unrelated, noncaretaking adult touched a child's intimate part supports an inference of touching for sexual gratification. *State v. Ramirez*, 46 Wn. App. 223, 226, 730 P.2d 98 (1986). Additional evidence of sexual gratification is required when the touching is through clothing or is not of a primary erogenous area. *State v. Powell*, 62 Wn. App. 914, 917, 816 P.2d 86 (1991). But even if a touching of intimate parts is over clothing, a sexual contact has occurred when the touching is not susceptible of innocent explanation. *See State v. Harstad*, 153 Wn. App. 10, 22, 218 P.3d 624 (2009).

---

[8] In *Lorenz*, the Supreme Court held that gratification is not an essential element of child molestation, but merely a "definitional term." 152 Wn.2d at 36. But the court has since confined the holding of *Lorenz* to jury instructions and held that the State still has the burden of showing sexual gratification as part of the burden to prove sexual contact. *Stevens*, 158 Wn.2d at 309.

In *Powell*, a young girl testified that a man touched her through her clothing, including hugging her chest and touching her underwear and thighs. 62 Wn. App. at 916. The victim was unable to describe precisely how the man touched her. *Powell*, 62 Wn. App. at 916. The court held that there was insufficient evidence of sexual gratification to convict the man because the touches were fleeting, his purpose was equivocal and susceptible of innocent explanation, and the man made no threats or requests for the victim not to tell. *Powell*, 62 Wn. App. at 918.

In *Harstad*, one victim testified that her father, breathing heavily, rubbed her inner thigh, close to her vagina. 153 Wn. App. at 19-20. Although the touching was not under the victim's clothing, the court held that the combination of the rubbing and heavy breathing implied a sexual purpose sufficient to support a finding of sexual contact. *Harstad*, 153 Wn. App. at 22-23.

Here, a rational jury could expect a person of common intelligence to know that M.P.'s buttocks and perineum are intimate parts. *See Adams*, 24 Wn. App. at 520. From the State's evidence, a reasonable jury could find that the touching was not susceptible of innocent explanation because M.P.'s molestation is more similar to *Harstad* than *Powell*. Unlike *Powell*, the touching here is not equivocal or susceptible of innocent explanation. The State presented evidence that Knight placed M.P. on his lap, that he rubbed M.P.'s buttocks with his hand moving deeper and closer to her perineum, that he asked M.P. to kiss him, and that he later told M.P. not to tell anyone. Such deliberate actions are not the momentary and potentially innocent contact that concerned the *Powell* court.

As in *Harstad*, the jury could rationally infer that Knight touched M.P. for the purpose of sexual gratification. Thus, we hold that sufficient evidence supports a finding of sexual gratification and sexual contact.

No. 47736-0-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

LEE, J.