[No. 54510–3.   En Banc.   July 14, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT K. LEAVITT, *Petitioner.*

*Neil M. Fox* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Michael Hogan, Deputy,* for respondent.

BRACHTENBACH, J.—Defendant was convicted by a jury of first degree statutory rape and indecent liberties upon his 6–year–old niece. The Court of Appeals affirmed. *State v. Leavitt,* 49 Wn. App. 348, 743 P.2d 270 (1987). We affirm.

The petition for review raises three issues. First, did the court err in the method by which testimony was elicited from the victim at the competency hearing? Second, can this defendant under these facts challenge the trial court's failure to hold a hearing specifically relating to the reliability of hearsay testimony given by a social worker who interviewed the victim at the Sexual Assault Center at Harborview Medical Center? Third, was defendant denied effective assistance of counsel?

The child victim, who lived with her aunt in an apartment located close to defendant's apartment, was left with defendant and his family over a weekend in July 1985 while her aunt went camping. After the aunt returned and picked the child up, the child appeared frightened and within 20 minutes said that defendant was hurting her. The next day the child called her mother and said that she needed to talk to her about defendant. Thereafter the child visited with her mother for a few days and repeatedly sought to talk with her mother about defendant. During the visit, the child cried in her sleep once and complained that "her bottom hurt."

When the mother started to take the child back to the aunt's home, the child became desperate and would not leave, would not talk in front of anyone else, and persuaded her mother to talk in her bedroom. Following the conversation, the child's mother took her to Harborview's Sexual Assault Center. There, in an interview with a social worker, the child described oral, vaginal, and anal sexual contact by defendant with her.

Defendant was charged with rape and indecent liberties. The trial court held a pretrial hearing to determine whether

the child was competent as a witness. The court did not, however, hold a hearing to determine the admissibility of the hearsay statements made by the child to the social worker to which the social worker testified at trial.

The first issue is narrowly drawn by the petition for review. At the competency hearing, the court permitted the victim to whisper to the social worker her answers to a limited number of questions from the prosecutor. During this procedure, defense counsel asked no questions. Defendant claims the trial court erred by allowing the social worker to relay the answers.

The procedure allowed by the trial court resulted from the child's unwillingness or inability to answer questions about the alleged sexual assault. She answered many questions about knowing the difference between telling the truth and lying, identified family members, named her schoolteacher, and gave the ages of her cousins. She testified that defendant, in his bedroom, touched her in a place she did not like. She described being in defendant's bedroom, both of them on the bed, but when asked what defendant was doing she replied "I don't remember". She testified that she had talked to the social worker several times "about what happened" but when asked "what did happen" she said "I don't remember."

In short, the child displayed appropriate competence except to describe the specific acts. The court noted that the child was very reluctant, very reticent. Upon suggestion from the prosecutor, the court swore the social worker to truly and correctly repeat the answers given by the child, if necessary. The judge noted the limited nature of the hearing, referred to applicable cases and ER 104(a), and stated his authority to exercise his discretion to arrive at the possible truth. The prosecutor then asked 12 questions, the child gave the answer to the social worker who then stated the answer aloud. The court noted that the social worker did not suggest the answers in any manner. The trial judge stated that he could hear most of the answers given by the child and that "I would say, if not all, 90 plus percent of

the answers came out exactly as what I had heard from the witness". Verbatim Report of Proceedings, at 79.

The defendant makes much of the court's comment about "90 plus percent." The defendant made no inquiry at the time it was made as to the meaning of the remark. Defendant's counsel made no request to be in a physical position to hear the child's answers. He made no request that the court reporter be allowed to hear the child's answers. We view the court's remark as a figure of speech pointing out that there was nothing in the exchange which caused the experienced trial judge to question the procedure or the answers.

█ We find no reversible error in the procedure used by the trial court. This very short exchange, during which the victim's answers were relayed by the social worker, was out of the presence of the jury. It was designed to resolve only the narrow question of competency. The trial judge heard the child's answers. The Rules of Evidence did not apply. ER 104(a).

█ We have long recognized that determination of the child's competency rests in the discretion of the trial court; it will not be disturbed absent proof of a manifest abuse of that discretion. *State v. Allen,* 70 Wn.2d 690, 692, 424 P.2d 1021 (1967). Under these facts we do not find a manifest abuse of discretion.

Defendant's second challenge relates to admissibility of the social worker's testimony relating the victim's statements about defendant's conduct toward her and the victim's demonstration with anatomically correct dolls. The prosecutor gave notice of intent to rely on hearsay testimony. *See* RCW 9A.44.120. At the beginning of the competency hearing, he suggested that the hearsay reliability issue could be "bootstrapped" with the competency issue. Thereafter no further mention was made about the reliability issue. The defendant claims error because the trial court did not hold a hearing, required by RCW 9A.44.120, to determine that the hearsay statements were reliable and therefore admissible.

Critical is the fact that at the time the hearsay evidence was given, defendant made no objection to the hearsay testimony. In fact, during cross examination defense counsel elicited hearsay testimony from the witness. The testimony came in during examination of the State's first witness; defendant raised no question until he was presenting his case; indeed he was presenting testimony of his fourth witness when he finally raised the issue. Defense counsel then asked the court to make a ruling on the reliability of the "child hearsay statements," specifically those offered by the social worker. The court held the matter was not timely raised. Counsel sought no further relief. The Court of Appeals held that since there was no manifest constitutional right involved, the failure to object in a timely manner was a waiver which precluded appellate review. *Leavitt,* at 357. The Court of Appeals alternatively found any error to be harmless if the issue were validly raised on appeal.

■ Usually the trial court's failure to comply with the hearing requirements of RCW 9A.44.120 is error. *State v. Jackson,* 46 Wn. App. 360, 730 P.2d 1361 (1986); *State v. Sammons,* 47 Wn. App. 762, 737 P.2d 684 (1987). The trial court's failure to hold the hearing in this case was error.

Defendant recognizes, however, that there is a waiver issue because he failed to object in a timely fashion. He maintains that he may nonetheless raise for the first time on appeal the question of the trial court's failure to hold the hearing as an issue involving a denial of due process. Because the child declarant testified at the trial as a competent witness, and was fully subject to cross examination, defendant correctly states he was not denied his right to confrontation. *United States v. Owens,* __ U.S. __, 98 L. Ed. 2d 951, 108 S. Ct. 838, 842 (1988); *California v. Green,* 399 U.S. 149, 158–64, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970).

Defendant's claim of a due process violation is not supported by the cases on which he relies. Instead, those cases pertain to defendant's right to confrontation where a child

declarant is not subject to cross examination and the reliability of hearsay statements is in question. *See, e.g., State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984). Moreover, defendant presents no reasoning supporting his claim that failure to hold the statutorily mandated hearing violates due process where the child declarant and the recipient of the hearsay statements are present at trial and subject to full cross examination. Defendant has failed to show a violation of his due process rights.

Finally, defendant argued to the Court of Appeals that, if there was a waiver, trial counsel's failure to timely object constituted ineffective assistance of counsel. The Court of Appeals held that counsel's performance was deficient and counsel was not merely employing trial strategy by failing to timely object to the failure to hold the hearing. *See Strickland v. Washington,* 466 U.S. 668, 687–91, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *State v. Thomas,* 109 Wn.2d 222, 225–26, 743 P.2d 816 (1987). The Court of Appeals held, however, that defendant had not shown that counsel's errors were so serious as to deprive him of a fair trial; defendant failed to show a reasonable probability that but for counsel's deficient performance the outcome of the trial would have been different. *See Strickland,* at 693–96; *Thomas,* at 225–26. The court reasoned that because the trial court's failure to hold the reliability hearing was harmless error there was no reasonable probability the outcome of the trial would have been different.

██ The State has not challenged the Court of Appeals holding that counsel's performance was deficient and we decline to discuss it. Assuming deficient performance, we agree that there is no reasonable probability that the outcome of the trial would have been different had the hearing been held. First, the child testified (unassisted) at trial that defendant put his "private spot" on her "private spot," that he put his "private spot" on her "heinie," and that she told her aunt, her mother, the social worker, and "Officer Friendly." Second, the child's statement to her aunt within

20 minutes after being picked up that defendant was hurting her, and her statement to her mother that she needed to talk to her about defendant were testified to by the aunt and mother and this testimony was not objected to by defendant. Third, the aunt testified that the child appeared frightened, and the mother testified that the child seemed nervous and jumpy, cried in her sleep, said her "bottom hurt," and "got very desperate and wouldn't leave" when it was time to return to her aunt's apartment in the same complex as defendant's apartment. Because the child's testimony, supported by that of her aunt and mother, mirrored the hearsay statements testified to by the social worker, we doubt that it is reasonably probable that the outcome would have been different had counsel timely objected to the admission of the hearsay statements, the hearing been held, and the hearsay statements been ruled inadmissible.

In any event, this record establishes that the hearsay statements were reliable, and therefore the lack of timely objection to the failure to hold the hearing did not affect the outcome of the trial; the statements were admissible. We note that we have examined this record for reliability of the statements in the context of the claim of ineffective assistance of counsel. We do not, therefore, decide the procedure for review of direct challenges to failure to hold the hearing mandated by RCW 9A.44.120. As discussed in this opinion defendant failed to preserve such a challenge.

■ The factors for assessing reliability of child hearsay statements include "'(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness.'" *Ryan*, at 175–76 (quoting *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982)). Also to be considered are factors from *Dutton v. Evans*, 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970): (1) whether the statement contained assertions about past fact—if not,

it carries on its face a warning to the jury not to give the statement undue weight; (2) whether cross examination could establish that the declarant was not in a position of personal knowledge to make the statement; (3) how likely is it that the statement was founded on faulty recollection; and (4) are the circumstances surrounding the making of the statement such that there is no reason to suppose that the declarant misrepresented the defendant's involvement, for example, was the statement spontaneous or against the declarant's penal interest? *Parris,* at 145–46 (quoting *Dutton,* at 88–89).

Applying the *Parris* factors here: Defendant testified that the child was motivated because she wanted her mother to assume full–time care of her, that she knew her mother hated defendant and claimed he had sexually assaulted her (the mother), and that the child made the allegations against him in order to convince her mother of the need to resume care of her. This testimony suggests a motive to lie, but we agree with the Court of Appeals that it would be more reasonable for the child to lie about her day–to–day treatment from her aunt if she wanted her mother to resume care of her. Moreover, the child complained first to her aunt, and not to her mother. Also, the child's young age indicates that she would be unlikely to fabricate the occurrence; she graphically described different sexual contacts.

As to the child's general character, her teacher testified that the child had a reputation for truthfulness in her first grade classroom. The record does not show that anyone other than the social worker heard the child or observed her nonverbal conduct with the dolls at the initial meeting at the Sexual Assault Center. However, the aunt testified that the child said defendant was hurting her and that she appeared frightened. The mother testified that the child called and said she needed to talk about defendant. Thus, others heard the child make statements about defendant, and the aunt was specifically told that defendant was hurting the child. Although the conversation desired by the child with her mother was put off by the mother, it took

place when the child became desperate upon imminent return to her aunt's apartment located close to defendant's apartment. The child's statements to her aunt and her mother, which suggest reliability of the statements to the social worker, were spontaneous, and her statements to the social worker were made in response to an open–ended question asking why the child was at the Sexual Assault Center.

The statements to the social worker were made within a few days after the occurrence, after the conversation the child finally had with her mother. There is no indication of any prior relationship between the social worker and the child; the initial relationship was neutral, as the Court of Appeals observed.

As to the *Dutton* factors, the child's statements were an assertion of past fact, and conceivably the defense could have revealed an inadequate knowledge basis through more extensive cross examination. However, child hearsay statements about sexual abuse will usually contain statements about past fact, and where defense does not inquire into details on cross examination it could usually be said that cross examination could have revealed an inadequate knowledge basis. These factors do not weigh in favor of reliability, but under these facts we conclude that they do not weigh in favor of unreliability, either. Because the child's statements were made soon after the event and were consistent with statements made to her aunt and mother, the possibility she was speaking from faulty recollection is remote. Finally, defendant's claim that the child lied in order to be cared for by her mother is unpersuasive, and the circumstances are otherwise such that it is unlikely that the child misrepresented the defendant's involvement.

We conclude that this record sufficiently establishes reliability of the hearsay statements, that the statements were admissible, and that the lack of a timely objection to the trial court's failure to hold the reliability hearing did not affect the outcome of defendant's trial. He was not denied effective assistance of counsel.

76

Affirmed.

PEARSON, C.J., UTTER, DOLLIVER, DORE, ANDERSEN, CALLOW, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.