# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72017-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| DAYLON ALBERT GEPNER, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: June 8, 2015 |

SPEARMAN, C.J. — Daylon Gepner was found guilty of one count of child molestation in the first degree. He appeals, arguing that the trial court erred in finding a child witness competent to testify and admitting child hearsay. Finding no error, we affirm.

## FACTS

Daylon Gepner resided with his father, Kelly Gepner, his stepmother Wendy Gepner, and his step-brother D.W. in Granite Falls, Washington. On October 30, 2012, Wendy found Gepner, age sixteen at the time, and her son, D.W., age eight, sitting close together under a blanket on the family's couch. She found the behavior odd because of the way that they were sitting, and asked them to get up. When they did, Wendy noticed that D.W.'s pants were undone. Gepner wrapped the blanket around his waist and moved to a different couch. Wendy confronted Gepner about what she had seen, and after an argument, Gepner left the house.

Wendy said to D.W., "[p]lease don't lie to me. I need to know what happened. Did he touch you?" Verbatim Report of Proceedings (VRP) (04/29/14) at 110. D.W. responded that Gepner had touched him. D.W. spoke with his mother later in the evening and he told her about another time that Gepner had touched him and had tried to penetrate him.

D.W. was taken to the hospital to be examined the following day. At some point D.W. told his mother that Gepner had touched his private parts numerous times during the past two years, beginning when Wendy began dating Gepner's father. Wendy asked D.W. if Gepner had touched her other son, C.M., as well, and D.W. said that he had. C.M. testified at trial that Gepner had never touched him inappropriately.

Later that day D.W. spoke with a sexual assault nurse examiner and told her that he was there because Gepner had tried to touch his private parts the night before, and that Gepner had subjected him to masturbatory and penetrative activity before. D.W. indicated that he was not in any pain at that time, and declined to undergo specific physical examinations. The following day D.W. was interviewed by a child interview specialist, during which he wrote that his brother had "tried to touch [him] in [his] privates." VRP (4/29/14) at 90.

On April 24, 2014, Gepner was charged with one count of child molestation in the first degree, two counts of rape of a child in the first degree, and two counts of attempted rape of a child in the first degree. At the adjudication, the court heard testimony from D.W., D.W.'s mother, Wendy, child interview specialist C. Webster, registered nurse T. Phillips, Snohomish County

Sheriff's Office Detective J. Ross, C. M., and Gepner's father Kelly. Over Gepner's objections, the trial court permitted Wendy and Ms. Phillips to testify about D.W.'s out-of-court statements, and admitted D.W.'s recorded statements to Ms. Webster. The trial court also found D.W. competent to testify.

Gepner was found guilty of child molestation in the first degree. On June 2, 2014, Gepner was sentenced to 30-40 weeks institutional placement with the Washington State Department of Social and Health Services, Division of Juvenile Rehabilitation. The trial court also imposed a no-contact order against Gepner on behalf of D.W.

## DISCUSSION

We first address the issue of D.W.'s competency, since a declarant's competency is a precondition to admission of his hearsay statements. State v. Ryan, 103 Wn.2d 165, 173, 691 P.2d 197 (1984). Competency of a witness is a matter to be determined by the trial court within the framework of RCW 5.60.050. Id. at 172. Under the statute, "[c]hildren under ten years of age, who appear incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly," will be considered incompetent to testify. RCW 5.60.050(2), LAWS OF 1986, CH. 195, § 2. The trial court is tasked with determining the witness's ability to meet the statutory requirements, through seeing the witness, noticing his or her manner, and considering his or her capacity and intelligence. State v. Allen, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967). The determination of competency lies within the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of

3

discretion. Id. On appeal, we may examine the entire record in reviewing the competency determination. State v. Woods, 154 Wn.2d 613, 617, 114 P.3d 1174 (2005).

The test for a child's competency as a witness consists of the following: "(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it." Allen, 70 Wn.2d at 692.

Gepner argues that the trial court erred in finding that the second and third Allen factors were satisfied. Br. of Appellant at 18. Gepner argues that D.W. did not have the mental capacity to perceive other alleged incidents of abuse because he did not remember specific locations or times when they occurred. Gepner also argues that D.W. did not have an independent memory of the event in the living room because his account of that event contained multiple inconsistencies. The State argues that the record demonstrates otherwise.

Inconsistencies in a child's testimony go to weight and credibility, however, not to competency. State. v. Kennealy, 151 Wn. App. 861, 878, 214 P.3d 200 (2009). We place particular reliance on the trial court's judgment in assessing a child witness's competency. Id. Here, D.W. demonstrated that he had the mental capacity at the time of the event to accurately perceive what was happening to him. D.W. may have been confused about what incidents occurred

when and where, but the record supports the trial court's finding of no fault with D.W.'s recollection of events that took place between March 2012 and October 30, 2012. We hold that the trial court did not abuse its discretion in finding that D.W. was competent to testify.

Gepner next argues that D.W.'s hearsay statements were inadmissible because they lacked sufficient reliability as required by RCW 9A.44.120(1). Under RCW 9A.44.120, a statement made by a child under ten years old describing acts of sexual contact or physical abuse, is admissible if:

> (1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
> (2) The child either:
> (a) Testifies at the proceedings; or
> (b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

The decision to admit child hearsay statements is reviewed for an abuse of discretion. Woods, 154 Wn.2d at 623. A trial court abuses its discretion only when its decision is manifestly unreasonable or is based on untenable reasons or grounds. State v. C.J., 148 Wn.2d 672, 686, 63 P.3d 765 (2003).

The reliability of a statement admitted under the child hearsay statute must be found in reference to circumstances surrounding the making of the out-of-court statement, and not from subsequent corroboration of the criminal act. Ryan, 103 Wn.2d at 174. The factors applicable to determining the reliability of out-of-court declarations are (1) whether the child had an apparent motive to lie; (2) the child's general character; (3) whether more than one person heard the

5

statements; (4) the spontaneity of the statements; (5) whether trustworthiness was suggested by the timing of the statement and the relationship between the child and the witness; (6) whether the statements contained express assertions of past fact; (7) whether the child's lack of knowledge could be established through cross-examination; (8) the remoteness of the possibility of the child's recollection being faulty, and (9) whether the surrounding circumstances suggested that the child misrepresented the defendant's involvement. Id. at 175-76. No single factor is decisive; the factors must be "substantially met" before a statement will be considered reliable. Kennealy, 151 Wn. App. at 881.

Gepner first argues that D.W. had a motive to lie in order to keep his mother's anger directed at Gepner, and not himself. The State argues there is nothing in the record that suggests D.W. was interested in getting anyone in trouble or avoiding his mother's anger. The focus of the inquiry on this factor is "whether the child was being truthful at the time the hearsay statements were made." State v. Gribble, 60 Wn. App. 374, 383, 804 P.2d 634 (1991). In Ryan, the trial court found that the child declarants had motive to lie because "each child initially told a different version of the source of the candy they were not supposed to have." 103 Wn. 2d at 176. In State v. Griffith, 45 Wn. App. 728, 739, 727 P.2d 247 (1986), the victim initially accused her father, and later alleged that her uncle had assaulted her. The trial court found that she had an apparent motive to lie because she testified that "Uncle Jimmy would hurt her father if she did not say [her father] did it. . . . Id.

In State v. Leavitt, 111 Wn.2d 66, 74, 758 P.2d 982 (1988), the defendant testified that the child had motive because she wanted her mother to assume full-time care of her and made the allegations to convince her mother to do so. The state Supreme Court found that while the testimony "suggest[ed] a motive to lie," it declined to find such motive because "it would be more reasonable for the child to lie about her day-to-day treatment from her aunt if she wanted her mother to resume care of her." Id. The court was also persuaded by the fact that the child first complained to her aunt, and not her mother, and because of her young age and graphic descriptions of sexual contact, it found it unlikely that she would have fabricated the events. Id.

Gepner argues that we should find motive to lie based on Wendy's anger at Gepner and her testimony that she observed the boys arguing and other changes in their behavior when she and D.W. moved into the house. We agree with the State that this is insufficient to show that D.W. had motive to lie. There is no evidence in the record that suggests that D.W. was trying to avoid his mother's anger or keep it directed at Gepner.

Gepner also argues that the trial court erred when it found that D.W.'s character had some indicia of reliability. He argues that the trial court disregarded evidence that D.W. had wrongly alleged that Gepner had inappropriately touched his half-brother C.M. and that C.M. had done the same to D.W. The State argues that D.W.'s general character was good and the record supported that he had no problems with dishonesty and knew the difference between a truth and a lie.

According to the State, the trial court is in the best position to judge a witness's reliability and this court should not disturb its findings on appeal.

We agree with the State. The basis for this factor is whether the child has a reputation for telling the truth. State v. Lopez , 95 Wn. App. 842, 853, 980 P.2d 224 (1999). In State v. Karpenski, 94 Wn. App. 80, 122, 971 P.2d 553 (1999), abrogated on other grounds by State v. C.J., 148 Wn.2d 672, 63 P.3d 765 (2003), the trial court found the child's hearsay statements to be unreliable where each statement of abuse "came after *numerous* equivocal responses" and were "accompanied by highly inconsistent responses demonstrating an extremely confused state of mind." Here, the only evidence in the record that suggests that D.W. was not telling the truth were his allegations, later recanted, that his half-brother had also touched him inappropriately, and that the half-brother had also been abused by Gepner, which were denied. The record also shows that D.W. knew the difference between a truth and a lie and that he had never had problems at home or at school with telling the truth. The trial court did not err when it found that D.W. had no "propensity to lie." CP at 42.

Gepner argues that D.W's statements were not spontaneous because they resulted from leading or suggestive questions. Gepner claims that all of the statements are unreliable because Wendy initially proposed the conduct to D.W. and he agreed to it. The State contends that the question was not suggestive, and even if it were, the answer was still spontaneous.

For purposes of determining reliability of a statement made by an alleged child victim of sexual abuse, "any statements made that are not the result of

leading or suggestive questions are spontaneous." In re Dependency of S.S., 61, Wn. App. 488, 497, 814 P.2d 204 (1991). Questions such as whether "anybody had touched [the child] in her private parts," are "not leading and in no way suggested an answer." State v. McKinney, 50 Wn. App. 56, 59, 63, n.4, 747 P.2d 1113 (1987). The definition of "spontaneous" for child hearsay purposes also "considers the entire context in which the child makes the statement." State v. Henderson, 48 Wn. App. 543, 550, 740 P.2d 329 (1987).

In Henderson, the child told the detective that her father rubbed her vagina with his hand. He asked her if it hurt and she said yes. When he asked her why it hurt, the child responded "[h]e sticks his fingers in me." Id. at 546. Henderson argued that the child's response to the latter question was inadmissible because it was made in response to the detective's questioning and therefore, not spontaneous. We rejected the argument, concluding that the question was neither leading nor suggestive and that the child had volunteered the information. Id. at 550. Similarly, in State v. C.M.B., 130 Wn. App. 841, 849, 125 P.3d 211 (2005), we found that the child's statements were sufficiently reliable even though the mother asked "'[Y]ou didn't touch each other in a bad way, did you?'" and admitted that she pressured her son to tell her what happened. She also testified that she did not ask any clarifying questions, but "'was just letting him talk to [her].'" Id.

Gepner cites to In re Dependency of A.E.P., 135 Wn.2d 208, 232-33, 956 P.2d 297 (1998) to support his argument that Wendy's "leading questioning of D.W. suggests that all of the statements D.W. made are unreliable." Brief of

9

Appellant at 12. In that case, the trial court considered whether the child's minimal sexual knowledge could have been obtained by her interactions with other children or her caretaker's repeated questioning of her about any possible abuses. These 12-15 estimated interrogations, each as long as 45 to 90 minutes, involved only closed and leading questions. Here, Gepner submits only the occurrence of Wendy asking D.W. whether or not Gepner "touched him," immediately after discovering them together. We find that this single incident of a non-leading question insufficient to cause us to question the spontaneity of D.W's statements.

Gepner argues that D.W.'s statements were not reliable because they were made to Wendy, D.W.'s mother, a non-neutral party, and someone with whom he had a relationship. He also argues that the surrounding circumstances, including Wendy's shock and anger at the discovery, made D.W.'s statements unreliable. In Leavitt, the court noted the fact that the child's statements were made to a social worker with whom she had no prior relationship with — "the initial relationship was neutral," weighed in favor of the statements' reliability. 111 Wn.2d at 75.

Gepner merely speculates that the confrontation between him and Wendy caused D.W. to make statements confirming her suspicions. But other than speculation, Gepner points to nothing in the record to show that Wendy's anger at Gepner would cause D.W. to falsely state what had occurred between them. The record shows no history of issues between D.W. and Wendy, and D.W.

testified that she was the only person he wanted to tell about the ongoing conduct.

We hold that the trial court did not err in holding that D.W.'s statements were admissible under RCW 9A.44.120.[1]

Affirm.

WE CONCUR:

Spearman, C.J.

Cox, J.

Dwyer, J.

---

[1]Gepner also argues that the statements made to the forensic nurse were not admissible under the exception for medical diagnosis and treatment. ER 803(a)(4) provides an exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Because we find that the trial court properly admitted D.W.'s statements under the child hearsay exception, we do not address their admissibility under ER 803(a)(4).