IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79924-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| M.B.D., d.o.b. 05/02/04, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — All witnesses are presumed competent to testify, and a party challenging the competence of a child witness must establish a compelling reason to rebut this presumption. Because M.D. fails to rebut the presumption of competence, the court did not abuse its discretion by letting A.K. testify.

A court also has considerable discretion when weighing the Ryan[1] factors and deciding to admit testimonial child hearsay under RCW 9.44.120. Because the court's findings of fact were, with an immaterial exception, supported by substantial evidence and the Ryan factors were substantially met, the court did not abuse its discretion by admitting A.K's hearsay statements.

M.D. contends the State failed to prove he and his victim, A.K., were not married. Because the evidence showed the boys were first cousins and first

_____

[1] State v. Ryan, 103 Wn.2d 165, 691 P.2d 197 (1984).

cousins cannot be married in Washington, the State adequately proved the two were not married when M.D. molested A.K.

M.D. challenges as unconstitutional the statute limiting juvenile defendants to bench trials. Because our Supreme Court already resolved this challenge to the same statute, M.D.'s challenge fails.

M.D. challenges four conditions of community custody on vagueness grounds. Because the conditions restricting his access to controlled substances and materials depicting "sexually explicit conduct" provide sufficient guidance, they are not vague. But the conditions prohibiting M.D. from possessing "any weapon" and from being tardy to school could invite arbitrary enforcement and require clarification.

Therefore, we affirm M.D.'s conviction for first degree child molestation and remand for the court to reconsider two conditions of community custody.

<u>FACTS</u>

About one week before six-year-old A.K. was to start first grade, he and his cousin were playing together at A.K.'s father house. A.K.'s cousin complained to A.K.'s father that A.K. had climbed on top of and humped her. A.K.'s father reprimanded his son and demanded an explanation. A.K. said he was "playing the rape game."[2] Soon after, A.K.'s mother picked up her son, and A.K.'s father explained what A.K. had done.

_____

[2] Report of Proceedings (RP) (Dec. 11, 2018) at 71.

To explain to A.K. why the rape game was bad, A.K.'s mother began to explain sex. When explaining the mechanics of sex, A.K. interrupted her and said, "penis goes into the butt."[3] A.K.'s mother had never spoken with him about sex before, heard him talk about sex, or heard anyone discuss sex around him. She asked, "Why would you say that?" and A.K. replied, "Because [M.D.] has done it to me."[4]

Until that day, M.D. and A.K. had regularly spent time together at their grandmother's apartment along with two older male cousins. M.D., who is seven years older than A.K., would visit his grandmother every few months. In addition to ordinary games, the four cousins would play the rape game, which meant running up behind someone and humping the other person while shouting "rape." Once, when A.K. was five years old, their grandmother caught them playing it and reprimanded the older boys.

A.K. explained to his mother that when he was five, M.D.'s penis had come into contact with his behind. He had accompanied M.D. to the bathroom because M.D., claiming to be afraid of an uncovered vent hole in the bathroom ceiling, demanded company from his younger cousins whenever he had to defecate. M.D. lowered his pants, told A.K. to do the same, and then M.D. put "his penis in [A.K.'s] butt."[5]

---

[3] Id. at 109.

[4] Id.

[5] Id. at 110; RP (Dec. 12, 2018) at 207.

After taking A.K. to his first day of first grade, his mother visited the police. About eight months later, M.D., who was then 14, was charged in juvenile court with first degree child molestation. The court conducted a bench trial, determined A.K. was competent to testify, and admitted A.K.'s hearsay statements pursuant to the child hearsay statute, RCW 9A.44.120. It found M.D. guilty and imposed conditions of community custody.

M.D. appeals.

## ANALYSIS

As a threshold matter, the State argues we should not consider two defense exhibits M.D. relies on in his briefing. It argues the exhibits were not offered as evidence, not considered by the court, and should not be considered on appeal. The State is correct that M.D. did not introduce the exhibits until after the court's oral ruling on A.K.'s competence to testify. But the two exhibits, consisting of defense interviews, were used during trial for purposes of impeachment by prior inconsistent statement. RAP 9.1(a) provides that the record on appeal includes "exhibits." Even though the two exhibits were used only for this limited purpose, they are properly part of the record on appeal. Most importantly, the two exhibits and arguments based upon them do not change the outcome of this appeal. We decline to strike them from the record on appeal.

I. Testimonial Competence

M.D. challenges two of the trial court's findings of fact made to support its conclusion that A.K. was competent to testify. We review a trial court's findings of

fact for substantial evidence.[6] "'Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding.'"[7] "Unchallenged findings of fact are verities on appeal."[8]

M.D. contends findings of fact 7 and 8 lack substantial evidence. Finding of fact 7 states, "There is no indication that A.K.'s ability to perceive the alleged incidents was deficient in any way. The incidents involved primarily what A.K. felt, but also what he saw and heard happening to him. His parents and other witnesses all testif[ied] that he was developmentally standard and would not have had any unusual gap[s] in these abilities."[9]

Unchallenged finding of fact 2 states A.K. was performing at grade-level in school. Unchallenged finding of fact 5 states when A.K. was in first grade, he "was able to describe in detail what he had done that morning, responding with sufficient vocabulary to an open-ended question" when interviewed by a child forensic interviewer about the molestation.[10] And after the court questioned A.K. to determine his competency, it found he "displayed [a] similar ability [with] other questions posed by the court and both parties."[11] No evidence indicated A.K. had any sensory or mental deficits. Because sufficient evidence existed to let the trial

---

[6] State v. Delbosque, 195 Wn.2d 106, 116, 456 P.3d 806 (2020).

[7] Id. (quoting State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994)).

[8] State v. A.X.K., 12 Wn. App. 2d 287, 293, 457 P.3d 1222 (2020).

[9] Clerk's Papers (CP) at 21.

[10] Id.

[11] Id. (unchallenged finding of fact 5).

court conclude A.K. did not have any perceptual deficits at the time of the molestation or when called to testify, substantial evidence supports finding of fact 7.

Finding of fact 8 states, "A.K. accurately described where he had gone to school since kindergarten and his teachers this year and last."[12] At the time of trial, A.K. was in second grade. M.D. is correct that A.K.'s testimony and interview with defense counsel are not definite about the name of his first grade teacher. However, sufficient evidence existed for the court to conclude A.K. accurately described where he attended school.

M.D. also challenges the court's legal conclusions about A.K.'s competence. We review a trial court's determination about the competency of a witness for abuse of discretion.[13] A court abuses its discretion where its decision was based on untenable factual or legal grounds.[14]

Every witness, regardless of age, is presumed competent to testify.[15] A witness is not competent to testify when they "appear incapable of receiving just impressions of the facts" about which they are questioned "or of relating them truly."[16] To rebut the presumption of competence, the party opposing the proposed child witness's testimony must provide a "compelling reason"

---

[12] Id.

[13] State v. S.J.W., 170 Wn.2d 92, 97, 239 P.3d 568 (2010).

[14] State v. Kennealy, 151 Wn. App. 861, 879, 214 P.3d 200 (2009).

[15] S.J.W., 170 Wn.2d at 100 (citing RCW 5.60.020; ER 601).

[16] RCW 5.60.050(2). A witness is also incompetent when "of unsound mind, or intoxicated at the time of production for examination." RCW 5.60.050(1).

challenging the child's competence to testify.[17]  A trial court then relies on the

standards in RCW 5.60.050 to determine competence and uses the Allen[18] factors

to guide its determination.[19]  The court considers whether the child:

> (1) understands the obligation to speak the truth on the witness
> stand; (2) has the mental capacity, at the time of the occurrence
> concerning which she is to testify, to receive an accurate impression
> of it; (3) has a memory sufficient to retain an independent
> recollection of the occurrence; (4) has the capacity to express in
> words her memory of the occurrence; and (5) has the capacity to
> understand simple questions about the occurrence.[20]

No single factor is dispositive.[21]  Inconsistencies in a child's testimony go to weight

and credibility, not to competency.[22]

---

[17] S.J.W., 170 Wn.2d at 101.

[18] State v. Allen, 70 Wn.2d 690, 424 P.2d 1021 (1967).

[19] S.J.W., 170 Wn.2d at 100.  M.D. cites Jenkins v. Snohomish County Pub. Utility Dist. No. 1, 105 Wn.2d 99, 102-03, 713 P.2d 79 (1986), for the proposition that the Allen factors are an elemental test and any unmet element requires finding the child incompetent to testify.  The Jenkins court's conclusion that "each element of the Allen test is critical" relied on the premise that "[t]he Legislature and the courts have recognized that child witnesses present special problems."  105 Wn.2d at 102.  But the Jenkins court was evaluating a child's competence to testify based on former RCW 5.60.050 (1881), 105 Wn.2d at 101, which the legislature later amended to remove the suggestion that children under 10 may not be suitable witnesses.  S.J.W., 170 Wn.2d at 100.  Without this presumption against child witnesses, the Jenkins court's approach no longer aligns with how courts evaluate a child's competence to testify.  See S.J.W., 170 Wn.2d at 98 (considering the standards for child testimonial competency and concluding "[n]either [In re Dependency of] A.E.P.[, 135 Wn.2d 208, 225, 956 P.2d 297 (1998),] nor Jenkins offers any guidance on the issue before us.").

[20] State v. Woods, 154 Wn.2d 613, 618, 114 P.3d 1174 (2005) (citing Allen, 70 Wn.2d at 692).

[21] See S.J.W., 170 Wn.2d at 100 (Allen factors merely "serve to inform the judge's [competency] determination").

[22] Kennealy, 151 Wn. App. at 878.

M.D. argues A.K. was unable to receive an accurate impression of the molestation. The purpose of the second Allen factor is to "ensure that the child has the mental capacity to perceive accurately the events to which the child is testifying."[23] The trial court "may infer the child's ability to accurately perceive events from the 'child witness's overall demeanor and the manner of [his] answers,' thus satisfying the second Allen factor."[24]

In State v. Woods, our Supreme Court upheld a trial court's determination that the second Allen factor was met and a four-year-old and a six-year-old were competent to testify where both victims gave accurate details about their abuser's apartment and about the general time period when the abuse occurred.[25] Because both witnesses were able to provide details of events and circumstances contemporaneous to the abuse and delivered consistent testimony about the molestation, both were competent to testify.[26]

Similarly, in State v. Kennealy, the court upheld the trial court's determination that a child sex abuse victim was competent to testify.[27] Despite the victim's diagnosed attention-deficit hyperactivity disorder and his confusion about

---

[23] Woods, 154 Wn.2d at 622.

[24] Id. at 621-22 (quoting State v. Sardinia, 42 Wn. App. 533, 537, 713 P.2d 122 (1986)).

[25] 154 Wn.2d 613, 620-22, 114 P.3d 1174 (2005).

[26] Id. at 621-22.

[27] 151 Wn. App. 861, 879, 214 P.3d 200 (2009).

many specific details, the court observed the victim testify consistently about the nature of the abuse and testify accurately about details in his life.[28]

Here, the court observed A.K. testify at the competency hearing. He consistently described how M.D. molested him.[29] He also related in multiple interviews and his testimony that he was abused while five years old, although he was unsure whether the abuse began at four or five. A.K. consistently described the circumstances of the molestation on multiple occasions and in his testimony. He also provided specific details about his grandmother's apartment. As in Woods and Kennealy, the court did not abuse its discretion by concluding the second Allen factor was satisfied.

M.D. argues the third Allen factor was not met because A.K. did not have a sufficient memory to independently recall the abuse when he testified. M.D. compares this case to State v. Swan,[30] where the court upheld a trial court's conclusion that a child witness was not competent to testify when the child did not know the day of the week or the color of her dress, failed to recognize her father or the defendants in the courtroom, and did not understand her obligation to tell the truth. Unlike the child witness in Swan, A.K. remembered details from years earlier, knew basic information about his life, understood his obligation to tell the

---

[28] Id. at 878-79.

[29] Compare State Ex. 3, at 21 (A.K. telling the forensic interviewer M.D. "put his testicles in my bottom" and that testicles is "a different word for penis."); RP (Dec. 12, 2018) at 207 (A.K. testifying M.D. "put his penis in my butt."); RP (Dec. 11, 2018) at 112 (mother testifying A.K. reported feeling M.D.'s penis on his butt).

[30] 114 Wn.2d 613, 645-47, 790 P.2d 610 (1990).

truth, and demonstrated a consistent recall about being molested and circumstances surrounding it. The discrepancies in A.K.'s testimony and his lack of recall regarding birthday parties and teachers' names go more to credibility than competency.[31] Because we presume all witnesses were competent to testify and M.D. has not provided a compelling reason to rebut that presumption, the court did not abuse its discretion by concluding A.K. was competent to testify.

II. Child Hearsay

M.D. challenges the court's decision to admit three sets of hearsay statements made by A.K to his father, his mother, and the child forensic interviewer.

Child hearsay statements are admissible under RCW 9A.44.120 in a criminal case when (1) the declarant was under the age of 10 and making a statement describing any actual or attempted act of sexual contact "performed with or on the child by another," (2) the declarant testifies, and (3) the court finds "that the time, content, and circumstances of the statement provide sufficient indicia of reliability."[32]

A. Statements to Father

M.D. argues the court erred by admitting A.K.'s statement to his father that he was "playing the rape game" with his cousin because the statement "did not describe 'any act of sexual contact <u>with or on</u> the child by another'" and so was not

---

[31] See Kennealy, 151 Wn. App. at 878.

[32] Other hearsay statements are admissible under circumstances not present here.

admissible under the child hearsay statute.[33] We review questions of statutory interpretation de novo.[34]

A.K. said he was "playing the rape game" with his cousin, which consisted of him approaching her from behind, humping her, and yelling "rape."[35] Rape is, even if simulated, inherently sexual, as is one person thrusting themselves upon another while shouting "rape." The statute does not allow admission of a child's statement reporting the performance of a sexual act by another with a different child,[36] but A.K., the child-declarant, reported his own performance of a sexual act with another. The statement was admissible.

B. Statements to Mother

M.D. argues the court erred when determining the reliability of two other sets of hearsay statements. We review a decision to admit child hearsay statements for abuse of discretion.[37]

---

[33] Appellant's Br. at 28, 29 (quoting RCW 9A.44.120(1)(a)(i)). The State argues M.D. failed to object to this testimony and raises his objection for the first time on appeal. The record does not support the State's contention. The trial court blended the hearsay hearing and trial and told the parties it would listen to all testimony before ruling on the State's proffered child hearsay statements. RP (Dec. 11, 2018) at 27-29. After the State finished its case-in-chief, it moved to admit A.K.'s statement to his father, RP (Dec. 12, 2018) at 272, and the parties argued the motion, RP (Dec. 12, 2018) at 272-93. Under the procedures the trial court used here, M.D. did not need to object to A.K.'s father testimony when it was given because the court contemplated arguments regarding admission would be considered later. The objection was preserved.

[34] S.J.W., 170 Wn.2d at 97.

[35] RP (Dec. 11, 2018) at 71; RP (Dec. 12, 2018) at 310.

[36] State v. Harris, 48 Wn. App. 279, 284, 738 P.2d 1059 (1987).

[37] Kennealy, 151 Wn. App. at 879 (citing Woods, 154 Wn.2d at 623).

The Ryan test provides nine factors for a court to consider when deciding the reliability of child hearsay:

> (1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statement, (4) the spontaneity of the statements; (5) the timing of the declaration and the relationship between the declarant and the witness; (6) whether the statement contained express assertions of past fact; (7) whether the declarant's lack of knowledge could be established through cross-examination; (8) the remoteness of the possibility of the declarant's recollection being faulty; and (9) whether the surrounding circumstances suggested the declarant misrepresented the defendant's involvement.[38]

No single factor is dispositive, but a statement is not considered reliable until the factors are "substantially met."[39]

M.D. argues the court improperly admitted the statements A.K. made to his mother in the car when he first revealed M.D.'s abuse. He challenges the court's conclusions on the first, third, fourth, fifth, eighth, and ninth Ryan factors.

M.D. argues court's conclusion on the first Ryan factor was not supported by substantial evidence. According to M.D., A.K. had a motive to lie because he was afraid of being disciplined by his mother for playing the rape game. M.D. argues the ninth Ryan factor was not met for similar reasons. The trial court concluded:

> A.K. had a potential motive to lie, the possibility of getting in trouble with his mom, but there is no indication that that potential motive in any way influenced A.K. A.K. expressed no concern about getting in trouble with his mother, there is no indication he was afraid, [and] he
>
> never requested that anyone not report anything to avoid getting him in trouble. Quite simply, while this was a potential motive to lie

---

[38] Id. at 880 (citing Ryan, 103 Wn.2d at 175-76).

[39] Id. at 881.

12

raised by the defendant, nothing factually supports a connection between the proposed motive and A.K.'s statement.[40]

To show he feared discipline, M.D. relies heavily on the fact that A.K. appeared "very quiet . . . down, sad, [and] distraught" before being picked up.[41] This single fact does not unsettle the court's conclusions. After A.K.'s father reprimanded him for playing the rape game and said he would tell A.K.'s mother, A.K. cried briefly and then played with his cousin again. After being picked up by his mother, A.K. was willing to speak with her about sex and the rape game, becoming "really upset" and "very reluctant" to speak only while revealing M.D.'s molestation.[42] Although A.K.'s father testified his son appeared "hesitant to go . . . [b]ecause he knew he was in trouble,"[43] A.K. did not know what "rape" meant,[44] allowing a reasonable inference he did not fear severe discipline for playing the rape game because he did not recognize the seriousness of his conduct.[45] No evidence suggests A.K. sought to avoid being disciplined or having his mother find out what he had done with his cousin. The court's finding of fact

---

[40] CP at 22.

[41] Appellant's Br. at 30 (citing RP (Dec. 11, 2018) at 107).

[42] RP (Dec. 11, 2018) at 113.

[43] Id. at 73.

[44] Id. at 107-08.

[45] See State v. Johnson, 188 Wn.2d 742, 762, 399 P.3d 507 (2017) ("'When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.'") (quoting State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

was supported by substantial evidence.  The court did not err by concluding the first and ninth Ryan factors were satisfied.

On the third Ryan factor, the court concluded "A.K. made multiple accounts that were all consistent, including similar language to describe the respondent's reactions."[46]  Citing Ryan, M.D. contends the court misconstrued this factor because A.K.'s statements to his mother were made only to her.  But cases after Ryan have held hearsay statements reliable where the initial statements were made only to one person and then repeated consistently to others soon after.[47]

Here, A.K. first revealed the abuse only to his mother and repeated the allegations consistently to others that same day.  A.K. made the same allegations with additional details over a month later when he spoke with the forensic child interviewer.  Because sufficient evidence in the record supports this finding of fact, it is supported by substantial evidence.  The court did not err by concluding the third factor was met.

M.D. contends the fourth Ryan factor was not met because A.K. spoke with his mother while afraid of being punished for playing the rape game.  But the court concluded A.K.'s fear of punishment did not affect what he told his mother, and that finding was supported by substantial evidence.  More significantly, the court found A.K.'s initial statement to his mother, "the penis goes in the butt," was

---

[46] CP at 22.

[47] See Swan, 114 Wn.2d at 650 (third factor indicated reliability where "more than one person heard similar stories of abuse" at different times); see also State v. Leavitt, 111 Wn.2d 66, 74-75, 758 P.2d 982 (1988) (hearsay statements were reliable when only one person initially heard the abuse allegations and they were corroborated by similar statements to others).

14

spontaneous.[48] That response prompted A.K.'s mother to ask additional questions, which the court concluded were open-ended. Substantial evidence supports these findings.[49] The court did not err by concluding the fourth factor was met.

M.D. argues the fifth Ryan factor was not met because "the timing of [A.K.'s] allegation suspiciously coincided with his anticipation of being in trouble with his mother."[50] But A.K. made the same allegations after the risk of discipline passed when speaking with a trained child forensic interviewer. The presence of a trained interviewer made the statements more reliable,[51] and, as discussed, the court found any possible fear of trouble with his mother did not affect A.K.'s revelations to her. M.D. fails to show the court misconstrued this factor.

M.D. contends the eighth Ryan factor, the risk of faulty recollection, was not met because A.K. was not competent to testify. This factor is satisfied when the record indicates a child has a normal memory and ability to perceive events.[52] Because, as discussed, the record showed A.K. had a normal memory, the ability

---

[48] CP at 22.

[49] M.D. appears to argue no statement can be considered spontaneous if "made in response to questioning," Appellant's Br. at 32 (citing Ryan, 103 Wn.2d at 176), but our case law has held for over 30 years that a statement can be legally spontaneous for a Ryan analysis if made in response to open-ended questions. Swan, 114 Wn.2d at 649-50; Kennealy, 151 Wn. App. at 883; State v. Henderson, 48 Wn. App. 543, 550, 740 P.2d 329 (1987).

[50] Appellant's Br. at 32.

[51] See State v. Young, 62 Wn. App.895, 901, 802 P.2d 829 (1991) (citing Henderson, 48 Wn. App. at 551) (presence of trained professionals, such as social workers, when child reveals sexual abuse enhances the statements' reliability).

[52] Woods, 154 Wn.2d at 624 (citing id. at 902).

to perceive events, and was competent to testify, the court did not err by concluding this factor was satisfied.[53]

Because the Ryan factors were substantially met, the court did not abuse its discretion by admitting A.K.'s hearsay statements to his mother.

C. Statements to the Child Forensic Interviewer

M.D. contends the court improperly admitted A.K.'s statements to the child forensic interviewer because his responses were not spontaneous or reliable.[54] M.D. argues the interviewer posed leading questions such as "I'd heard that you talked to your mom about, like, something that happened with your body. . . . I wanna learn about, um, about, if something happened, like, with your body. Tell me about that."[55] But this was an open-ended question because it did not suggest an answer or invite sexual details.[56] In its oral ruling, the court explained A.K.'s responses in the interview were spontaneous because he responded to "very open-ended questions [in] a very professional, well-done child interview."[57] The record supports this conclusion. Because A.K.'s statements were made in

---

[53] Competency to testify is neither necessary nor sufficient to satisfy this factor, Swan, 114 Wn.2d at 652, but, here, the analyses support each other.

[54] M.D. also argues the court improperly admitted irrelevant information because it admitted the entire interview. But, as the State notes, M.D. fails to explain what prejudice he suffered from admitting the entire interview. And, even if the admission was erroneous, M.D. waived any objection because he did not raise a relevance objection to admitting the entire interview. RAP 2.5(a).

[55] Appellant's Br. at 35-36 (citing State Ex. 3, at 21).

[56] See Kennealy, 151 Wn. App. at 883 (explaining questions were open-ended when they "did not suggest that the child respond with a statement about sexual contact.").

[57] RP (Dec. 12, 2018) at 291.

response to open-ended questions, they were legally spontaneous for the Ryan analysis.[58]  M.D. fails to show the court abused its discretion by admitting A.K.'s statements to the child forensic interviewer.

III. Failure to Prove Essential Elements to Convict

To prove M.D. guilty of first degree child molestation, the State had to show, among other elements, that M.D. and A.K. were not married.[59]  M.D. contends the State failed to prove this element.  When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State with all reasonable inferences drawn in the State's favor and against the defendant.[60]

It is clear from the evidence that A.K. and M.D. were first cousins. RCW 26.04.020(1)(b) prohibits marriages between first cousins.  Because their marriage was a legal impossibility in Washington and such circumstantial evidence of their relationship rules out any marriage, the State presented sufficient evidence for the court to infer beyond a reasonable doubt that M.D. and A.K. were not married.[61]

---

[58] Kennealy, 151 Wn. App. at 883.  M.D. makes similar arguments about the first, eighth, and ninth Ryan factors being misapplied because A.K. had a motive to lie and a faulty memory.  For the reasons discussed, these arguments again fail to show the trial court abused its discretion.

[59] RCW 9A.44.083(1).

[60] Johnson, 188 Wn.2d at 762 (citing Salinas, 119 Wn.2d at 201; State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality op.)).

[61] Circumstantial evidence can prove that a defendant was not married to his victim.  State v. Rhoads, 101 Wn.2d 529, 532, 681 P.2d 841 (1984) (citing State v. Shuck, 34 Wn. App. 456, 661 P.2d 1020 (1983)).  For example, in Shuck, this court concluded the State presented evidence "more than sufficient to enable a rational trier of fact to infer beyond a reasonable doubt" that a statutory rapist

IV. Right to a Jury Trial

M.D. argues RCW 13.04.021(2) is unconstitutional because it prohibits jury trials for juvenile defendants. In State v. Chavez, our Supreme Court held RCW 13.04.021(2) does not violate a juvenile's right to a jury trial.[62] Pursuant to Chavez, we conclude RCW 13.04.021(2) is constitutional.

V. Community Custody Conditions

M.D. challenges four community custody conditions as unconstitutionally vague. A community custody condition is unconstitutionally vague when it (1) fails to sufficiently define the conduct it prohibits "so an ordinary person can understand the prohibition" or (2) does not provide "sufficiently ascertainable standards" to protect against arbitrary enforcement.[63] A condition "is not vague when a person 'exercising ordinary common sense can sufficiently understand' it."[64] We read

---

was not married to his victims where both victims were in ninth grade and had known the rapist for only one month. Id. at 458.

M.D. compares this case to In re Personal Restraint of Crawford, 150 Wn. App. 787, 796, 209 P.3d 507 (2009). In Crawford, the foreign trial court had no evidence of the defendant's relationship with his victim when it found him guilty, so Division II of this court concluded the State failed to show the defendant's foreign conviction for child molestation also satisfied the comparable Washington statute for purposes of sentencing. Id. at 797. Here, the trial court could infer M.D. and A.K. were first cousins. The comparison is not apt.

[62] 163 Wn.2d 262, 272, 180 P.3d 1250 (2008).

[63] State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).

[64] Id. at 679-80 (quoting Gibson v. City of Auburn, 50 Wn. App. 661, 667, 748 P.2d 673 (1988)).

each condition in a commonsense manner and understand them within the context of other conditions.[65]

The court prohibited M.D. from possessing or using "non-prescribed drugs and/or alcohol."[66] He argues this is vague because it includes ordinary, over-the-counter drugs like Tylenol and ibuprofen. But, as the States notes, we understand this condition in the context of related provisions, including the prohibition on M.D. possessing or consuming "alcohol or any controlled substance except by doctor's prescription."[67] Read together, the ban on "non-prescribed drugs" is limited to "any controlled substance except by doctor's prescription." RCW 69.50.101(g) defines a "controlled substance" as "a drug, substance, or immediate precursor included in Schedules I through V as set forth in federal or state laws, or federal or commission rules." Over-the-counter drugs, like acetaminophen or ibuprofen, are not controlled substances.[68] There is sufficient specificity to guide M.D.'s decisions and avoid arbitrary enforcement. The condition is not vague.

M.D. contends the community custody condition prohibiting him from possessing sexually explicit material must be stricken for vagueness. Condition 5 states M.D. may not "possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as

---

[65] State v. Wallmuller, 194 Wn.2d 234, 245, 449 P.3d 619 (2019); State v. Nguyen, 191 Wn.2d 671, 679, 425 P.3d 847 (2018).

[66] CP at 50.

[67] CP at 25.

[68] See RCW 69.50.202-.212 (schedules of controlled substances).

defined by RCW 9.68A.011(4) unless given prior approval by [his] sexual deviancy provider."[69]  M.D. challenges only the prohibition on material depicting "sexually explicit conduct" and does not argue the prohibitions on "sexually explicit" or "erotic" materials are vague.

Our Supreme Court's decision in State v. Nguyen held that the phrase "sexually explicit material" contained in a condition of community custody was not unconstitutionally vague.[70]  The court did not address a prohibition on materials depicting "sexually explicit conduct."[71]  However, in State v. Bahl, the court considered a vagueness challenge to a community custody condition prohibiting an offender from visiting businesses dealing in "sexually explicit" materials.[72]  The court explained a business selling "sexually explicit" material primarily sold "'clearly expressed sexual' materials or materials that are unequivocally sexual in nature."[73]  Within the context of the condition, the offender could tell he was prohibited from visiting "adult bookstores, adult dance clubs, and the like."[74]  The court concluded the condition was not vague.[75]

---

[69] CP at 50.

[70] 191 Wn.2d 671, 670-81, 425 P.3d 847 (2018).

[71] The State also argues State v. Peters, 10 Wn. App. 2d 574, 594, 455 P.3d 141 (2019), and State v. Casimiro, 8 Wn. App. 2d 245, 250, 438 P.3d 137 (2019), resolved this challenge.  Like Nguyen, these cases address challenges to prohibitions on only "sexually explicit material" and do not resolve the issue here.

[72] 164 Wn.2d 739, 743, 193 P.3d 678 (2008).

[73] Id. at 759.

[74] Id.

[75] Id. at 760.

M.D.'s challenge is similar, except the court here provided additional guidance by defining "sexually explicit conduct" by referring to RCW 9.68A.011(4). Read with the commonsense definition of "sexually explicit" from Bahl, the trial court prohibited M.D. from possessing, using, accessing, or viewing unequivocally sexual materials depicting the actual or simulated conduct specified in RCW 9.68A.011(4). This provides sufficient specificity to warn M.D. against viewing a movie produced for an "unequivocally sexual" reason, such as an adult film's depiction of intercourse, as opposed to a sex scene in a James Bond movie. The condition is not vague.

M.D. argues the community custody conditions prohibiting him from possessing a "firearm/weapon" or "any weapon" are vague. In State v. Casimiro, the court upheld a community custody condition prohibiting an offender from "owning or possessing dangerous weapons such as hunting knives or a bow and arrow."[76] The court concluded the term "dangerous weapon" was not vague because the custody condition included an illustrative list of prohibited weapons.[77] The dilemma here is that the dictionary definition advocated by the State is broad enough to include, for example, a wide variety of knives not limited to the "dangerous weapons" addressed in Casimiro. M.D. could be found to have

---

[76] 8 Wn. App. 2d 245, 250, 438 P.3d 137 (2019).
[77] Id.

violated this condition by going fishing and taking a fillet knife to clean his catch. This condition fails to provide sufficient guidance and is vague.[78]

M.D. argues two related conditions about school attendance that use different terms create an ambiguity. The order on disposition requires that M.D. attend school "with no suspensions, expulsions, behavioral referrals, <u>tardies</u>, or unexcused absences,"[79] and community custody condition 2 requires that he "[m]aintain regular school attendance with no unexcused absences, <u>tardies</u>, or behavioral referrals, suspensions, and work to a level commensurate with ability."[80] M.D. contends it is ambiguous whether being tardy to school would violate his conditions of community custody. The State argues M.D. would receive an excused absence if he arrived late to school with an appropriate excuse.

But a tardy is not an absence. When read together, the conditions plainly prohibit any tardy, whether excused or not. And the adjective "unexcused" does not apply to every item listed in custody condition 2.[81] Neither the order on disposition nor custody condition 2 allow excused tardies. But both allow excused absences, and an absence from school is generally more serious than merely arriving late. Because these requirements appear to create an illogical incentive

---

[78] We also note this condition fails to define "possession" as actual or constructive, creating additional ambiguities that could allow arbitrary enforcement.

[79] CP at 44 (emphasis added).

[80] CP at 50 (emphasis added).

[81] <u>See</u> <u>PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue</u>, 9 Wn. App. 2d 775, 781, 449 P.3d 676 (2019) ("series-qualifier" rule of grammar does not apply when a modifier does not make sense with all items in a series), <u>review granted</u>, 194 Wn.2d 1016, 455 P.3d 134 (2020).

for M.D. to skip school and seek an excused absence any time he might arrive late, the court should clarify this condition on remand.

Therefore, we affirm M.D.'s conviction and remand for clarification of the two conditions of community custody.

_____

WE CONCUR:

_____    _____
Mann, C.J.